CASE 37—EQUITY—JANUARY 14.

# McHenry, Etc. v. Winston, Commissioner of the Jefferson Circuit Court.

APPEAL FROM CHANCERY DIVISION OF JEFFERSON CIRCUIT COURT.

1. SPECIAL COMMISSIONERS—RIGHT TO SELECT.—Under section 400 of the Kentucky statutes the court has a discretion to refuse to appoint a special commissioner selected by the parties, and that discretion will not be interfered with unless a clear abuse is shown.

2. MASTER COMMISSIONER—FEES OF.—Under the Act of June 15, 1893, which is applicable to the Master Commissioner of the Jefferson Circuit Court, the fees of such Commissioner are fixed, and the court has no power to prescribe rules giving him compensation in excess of the amounts fixed by that act.

WILLIAM MARSHALL BULLITT FOR THE APPELLANT. (BULLITT & SHEILD OF COUNSEL.)

1. Historical sketch of chancery commissioners in Kentucky; Dunlap v. Kennedy, 10 Bush, 539; Act February 28, 1835 (p. 414); Act February 20, 1839 (p. 295); Revised Statutes, Ch. 65; General Statutes, Ch. 41, Art. 16; Ch. 75, sec. 14; Civil Code, sec. 779, 782; Constitution, sec. 59; Act April 21, 1892 (Ky. Stat., sec. 392, et seq.); Act February 25, 1893, (Ky. Stat., sec. 408); Act June 15, 1893 (Ky. Stat., sec. 1720 et seq.); Act March 15, 1894 (Ky. Stat., sec. 1740).

2. In adopting the Act of February 25, 1893 (Ky. Stat., sec. 408) the Legislature never intended to give circuit courts unrestrained power to fix the fees of their commissioners in disregard of the fees fixed by statute.

(a) Whatever discretion was given the court to prescribe fees was limited to prescribing fees for "reports" and other services of that kind.  Barbour v. City of Louisville, 83 Ky., 95; 17 Am. &

Eng. Ency. of Law, 278; 23 Am. & Eng. Ency. of Law, 441; Sutherland on Statutory Construction, sec. 268 *et seq.*

(b) The discretion given was further limited to prescribing fees for services performed by the *deputy*—not exceeding the amount allowed by statute to the Commissioner for services performed by himself.

3. The Act of February 25, 1893, was, in part, superseded by the Act of June 15, 1893. Russell v. Avritt, 19 Ky. L. R., 202; McTigue v. Com., 99 Ky., 66.

4. Any statute giving the court, whose commissioner has a deputy, power to prescribe fees different from those allowed other commissioners is void. Constitution, sec. 59; Russell v. Avritt, 19 Ky. L. R., 202; Wathen v. England, 19 Ky. L. R., 1601; City of Louisville v. Kuntz, 47 S. W. R., 592; State v. Loomis, 115 Mo., 307; State v. Hammer, 42 N. J. L., 436; Gulf, etc. Ry. Co., v. Ellis, 165 U. S., 150; Stone, Auditor, v. Wilson, 19 Ky. L. R., 126; Winston, Comr., etc., v. Stone, Auditor, 19 Ky. L. R., 1483; Com. v. Taylor, 19 Ky. L. R., 552; Citizens National Bank v. Calloway, 19 Ky. L. R., 1630; Boyd v. U. S., 116 U. S., 616.

5. The court should have appointed the commissioner agreed upon by all parties to the suit. Act of April 21, 1892 (Ky. Stat., sec. 400.)

HARRIS & MARSHALL FOR THE APPELLEE. (DODD & DODD OF COUNSEL.)

1. The court in general term was authorized to adopt rules. Ky. Constitution, sec. 137; Ky. Stat., sec. 1034.

2. Rule 9, sec. 4, Jefferson Circuit Court Rules, adopted in General Term, is authorized by sec. 408, Ky. Stat.

3. Section 408, Ky. Stat., is not in conflict with sec. 1740 of the Ky. Stat., and both must be given effect. Dazey v. Killam, 1 Duv., 403; Cumberland & Ohio R. R. Co., v. Barren County Court, 10 Bush, 604; Brown's Admr., v. Miller, 4 J. J. M., 474; Eliz. & Paducah R. R. Co. v. Elizabethtown, 12 Bush, 233; Peyton v. Mosely, 3 Mon., 80; City of Henderson v. Lambert, 8 Bush, 609; Ky. Stat., sec. 1760 to 1776, inclusive;

4. Section 408, Kentucky Statutes, is constitutional. Ky. Con., sec. 59, sub-sec. 1; Stone, Auditor, v. Wilson, 19 Ky. L. R., 126; Com. v. E. H. Taylor, Jr., 41 S. W. R., 11; s. c. 19 Ky. L. R., 552; Winston, Com. v. Stone, Auditor, 43 S. W. R., 398; s. c. 19

McHenry, etc., v. Winston.

Ky. L. R., 1483; Citizens National Bank v. Calloway, 19 Ky. L.
R., 1630; Welker v. Potter, 18 O. St., 85; Wheeler v. Philadel-
phia, 77 Pa. St., 333; Kilgon v. Magee, 85 Pa. St., 401.

WILLIAM MARSHALL BULLITT FOR APPELLANT IN PETITION FOR
MODIFICATION OF THE OPINION.

Winston did not collect and disburse the money and should not
be allowed fees for that service.

DODD & DODD FOR THE APPELLEE IN A PETITION FOR REHEARING
AND MODIFICATIONS.    (HARRIS & MARSHALL OF COUNSEL.)

WM. H. HOLT FOR APPELLEE, in petition for a rehearing, cited the
steps in Senate and House on the passage of the Acts con-
strued in the opinion and cited further, Edgar v. Connors, 70
Ind., 331; and Cooley Con. Lim., (6 ed.), p. 162.

BARNETT & POSTON appeared by leave of court and filed a brief
for Darwin W. Johnson, Receiver of the Jefferson Circuit Court,
in response to appellee's petition for rehearing.
The questions urged by the appellee are not presented by the record.

JUDGE HOBSON DELIVERED THE OPINION OF THE COURT.

In this case the Jefferson Circuit Court ordered a sale of
certain property as prayed in the petition.    Thereupon the
parties agreed upon T. H. Whayne as special commissioner
to make the sale, and moved the court to appoint him in
place of the regular commissioner, G. A. Winston.    The
reason for this motion seems to be that Whayne agreed
to make the sale for less than the court allowed its regular
commissioner in such cases.    The court overruled the mo-
tion for the appointment of a special commissioner, and
this is the first question to be determined on the appeal.
It is insisted that, where the parties agreed upon a special
commissioner, the court, under sec. 400 of the Ken-

tucky Statutes, had no discretion, but was absolutely required to appoint him, and displace the regular commissioner. The section reads as follows: "The parties or their attorneys may be permitted by the court to select a receiver or commissioner, in any action or proceeding, to perform the duties of the master commissioner. Before acting, such commissioner or receiver shall be sworn and execute bond," etc. It will be observed that the provision is that the parties or their attorneys "may be permitted by the court" to select a commissioner. The word "permit," with an infinitive, is defined as meaning "to authorize or give leave;" as in the familiar quotation, "Thou art permitted to speak for thyself." The language used is essentially different from a provision that the parties or their attorneys may select a receiver or commissioner. The words, "may be permitted by the court," seem to us aptly to express the idea that the court may withhold its permission if it sees proper. The commissioner's office would be worth but little often if he could be set aside by the parties without permission of the court. Courts of chancery have always had control over their commissioners, and we do not think there is anything in this statute to change this wise and time honored rule. The motion to appoint the special commissioner was addressed to the chancellor's sound discretion, and, unless a clear abuse of that discretion is shown, his decision will not be interfered with.

The regular commissioner made the sale as directed by the judgment. The property was sold for cash, and brought $26,000. The commissioner was allowed $272 for his services. The parties excepted to the allowance, and this is the only other question arising on the appeal. The pro-

McHenry, etc., v. Winston.

priety of the allowance depends upon the construction of several acts of the Legislature, which will now be noticed.

On April 21, 1892, the Legislature passed an act entitled, "An act relating to commissioners and receivers," embracing, in effect, the provisions of the General Statutes on this subject, but not regulating the amount of their fees. See Sess. Acts 1891-93, pp. 47-51. This act contained no emergency clause. The same Legislature, on February 25, 1893, passed an act entitled, "An act concerning commissioners of circuit courts," the first section of which required the commissioner to keep in his office a docket; the second authorized him, with the consent of the court, to appoint deputies; the third required all deeds to be made by him, unless otherwise specially ordered; the fourth made his fees collectible as clerk's fees. The remaining sections of the bill read as follows: "Whenever the commissioner needs for the proper conduct of his office, a deputy, and he and his deputy or deputies are constantly employed in the discharge of their duties, the court may allow him, for reports and other services rendered under order of court, such fees as the court may prescribe by rule or otherwise." "An emergency is declared to exist that requires that this act shall go into effect when approved by the Governor, and it shall go into effect when approved for the reason that the present law is incomplete; and the act entitled 'An act relating to commissioners and receivers,' approved April 21, 1892, has not an emergency clause, and in some parts of the State the business of the commissioners and courts is so great and pressing as to require the immediate enforcement of this act." See Acts 1891-93, pp. 493, 494. Under the authority quoted, the court below adopted the following rule

governing the fees of its commissioners: "Until or unless otherwise ordered, he [commissioner] shall make all sales under judgment of the several divisions of this court, and shall receive as compensation for each sale five per cent. on the first $300 of the reported bid or bids (where more than one piece or parcel of property is sold under one judgment), and one per cent. on all excess over said sum of $300, and shall also receive all fees and costs for services incident to said sale, required by law or by the parties, including costs of advertising, and for the care of the property in his custody and keeping, all of which shall be taxed as other costs in the action: provided, that his commissions for any one sale shall not exceed $1,000, and in event the report of sale for any cause shall not be confirmed, or a sale after being ordered shall be advertised by him, and afterwards withdrawn by the party ordering the same, he shall only receive the costs incurred by him, and such compensation as the court, in its discretion, shall allow him for the services performed." Subsequently, the same Legislature, on June 15, 1893, passed an act entitled "An act relating to fees," regulating the fees of officers in this State, including commissioners, under article 8 of which the fee for making the sale in question would be $25. See Acts 1891-93, p. 1146. The concluding section of this act is an emergency clause, and reads as follows (page 1163): "Whereas there are many good and wholesome changes made by this act in regard to the fees of public officers of this Commonwealth, and the giving immediate effect thereto will be of great benefit to the Commonwealth; therefore an emergency is hereby declared to exist and this act shall take effect upon the approval thereof by the Governor."

McHenry, etc., v. Winston.

The allowance to the appellee of $272 was made pursuant to the rule above quoted, the court below, taking the view that the three acts having been passed by the same Legislature should be construed together as one enactment, and that the fees prescribed for commissioners by the act of June 15, 1893, do not apply to commissioners having deputies engaged in their office all the time, and that as to these there is no limitation, but that the court may allow any amount it sees proper. When the act of February 25, 1893, was passed, the preceding act did not authorize the appointment of deputy commissioners. It contained no emergency clause. The thing in the mind of the Legislature chiefly seems to have been the appointment of deputy commissioners, and some provision for their compensation, to enable the pressing business requiring immediate attention to be done. The Constitution which had just been adopted required a revision of the statute laws of the State, and one of the purposes of this revision was to secure a uniform system of laws throughout the State. The commissioners appointed for that purpose had reported to the General Assembly the revision which is now known as the Kentucky Statutes; but only a small part of it had been adopted when the act of February 25, 1893, was passed. The chapter on fees had not been passed, and it would seem from the emergency clause attached to the act of February 25, 1893, that the business of the courts was suffering. When the act of June 15, 1893, was passed, regulating fees, it seems to us, both from its title and the emergency clause quoted, to have been intended to operate uniformly throughout the State, and that after its adoption the court below had no authority, by rule or otherwise, to allow its commissioner any other fees than those there-

in prescribed for the services enumerated in the statute. We are confirmed in this conclusion by the fact that this act, after providing, in article 8, the fees of commissioners, in article 18 fixes appellee's salary and that of his deputies, requiring him to send to the Auditor monthly a statement showing the amount of money received or collected the preceding month as fees or compensation for official duties, thus showing that the Legislature had appellee in mind when enacting the statute; and as the first part of the act prescribes certain fees, and the latter requires a report to be made of fees collected by him, the reasonable construction is that the fees to be reported are the same provided in the former section of the act. The fees of clerks, sheriffs, and all other officers are, by this act, uniform throughout the State. It was plainly intended to govern the whole subject of fees provided for in it. Any other construction would defeat that uniformity of law throughout the State which it was the special aim of the Constitution to establish.

Originally the whole subject of commissioners' fees rested in the discretion of the chancellor. Under this system, there were some abuses and much complaint. So, the Legislature has from time to time, by statute, fixed the amount to be allowed commissioners for certain services. The Kentucky Statutes carry this further, and are more minute and particular than the previous statutes, showing an intention to make the amount of these fees a matter of positive law, and not of discretionary allowance. There is year by year a tendency to concentrate the legal business of the State in the larger cities. It was certainly not contemplated that a litigant should pay one price for a commissioner's services in Franklin county,

and a different price in Jefferson county for the same services. If there is more business in the commissioner's office, from analogy to all other occupations, it ought to be done more cheaply than in those offices where there is less business to be done. The same causes that have added to the business of the commissioner's office in Jefferson county have also added to the business of the clerk and sheriff; but they get the same fees as are paid in other counties in the State. We see nothing in the statute to exempt the commissioner from the law governing all other officers in Jefferson county; and, even if it can constitutionally be done, we do not think that this exception should be imputed, except upon the clearest legislative expression of such an intention.

The legislative journals seem to us consistent with our conclusion. They show that the act of June 15, 1893, was prepared by the revisory commission provided by the Constitution; and, while this bill was pending, the act of February 25, 1893, was introduced from a house committee, and rushed through as though a matter of emergency. A long contest was had between the two Houses over the general bill before it became a law, and it was put in its final shape by a conference committee. The struggle over this bill would indicate that it was regarded a permanent measure. The other bill went through with little opposition, as if only a temporary measure meant to supply a present need, while the Legislature was getting in shape the general law contemplated by the Constitution. It is true that appellee only gets, under article 18, act June 15, 1893, 75 per cent. of the fees, although not enough is collected to cover the salaries and expenses of his office. Counsel rely on this as showing a want of uniformity,

because the commissioners in the smaller counties in the State get the full amount of these fees; but this statute is in strict accord with secs. 106 and 246 of the Constitution, and if there is a want of uniformity as supposed by counsel, it is due to the provisions of the Constitution itself. Among other things, section 106 provides that "the fees of county officers shall be regulated by law." Act June 15, 1893, seems to have been prepared to carry out this provision prescribing definitely the fees of county officers. It is the only standard for measuring these fees, and is applicable throughout the State. The judgment is therefore reversed, and the cause remanded to the lower court, with directions to allow appellee, for making the sale, $25, the compensation fixed by this statute.