## Fox v. Petty, Sheriff.

(Decided May 13, 1932.)

386

HOWARD B. LEE and WM. D. BECKER, for plaintiff.

BAILEY P. WOOTTON, Attorney General, GARDNER K. BYERS, Assistant Attorney General, and STANLEY GARFEIN, for defendant.

OPINION BY JUDGE CLAY—Overruling motion to dissolve temporary injunction.

At its 1932 session the General Assembly passed an act which became a law without the Governor's signature, entitled:

> "An Act creating a County Civil Service Board in counties of this Commonwealth in which there is located a city of the first class; defining the powers and duties of said Board; providing for the expenses thereof; repealing Sections 3783 and 3784 of Carroll's Kentucky Statutes, compiled and edited by the Baldwin Law Book Company, 1930 Edition, in so far as said sections relate to counties having a city of the first class."

The act provides for the creation in counties having a city of the first class of a county civil service board consisting of four members, to be equally divided between the two dominant parties, and to be appointed by the sheriff of the county from lists furnished by the chairman of the city and county executive committee of each of said parties. It authorizes the county civil service board once each year to divide the county into as many districts as the public peace and good order of society may require, and appoint in each district a company of patrols to consist of a captain and patrols necessary for official service to maintain peace and good order. It requires the patrols to be equally divided between the two dominant parties, and to be appointed from lists previously submitted to the board by the chairman of the county and city executive committee of such political parties.

This action was brought by plaintiff individually, and as judge of Jefferson county, against Hubbard R. Petty, sheriff of Jefferson county, for a declaration of

the rights of the parties, and to enjoin the defendant from putting the act into effect, on the ground that it was unconstitutional for several reasons. The chancellor held the act invalid on the ground that it violated sections 59 and 60, and also sections 2 and 3, of the Constitution, and granted a temporary injunction. The case is now before me on motion to dissolve, and the questions presented have been considered by all the judges. In view of our conclusion only one of the grounds on which the validity of the act is assailed need be considered. The patrol law in one form or another has been in effect since 1799. In 1851, what is now section 3780, Kentucky Statutes, assumed its present form. That section reads as follows: ''County courts may, once in each year, divide their respective counties into as many districts as the public peace and good order of society may require, and appoint in each district a company of patrols, to consist of one captain and not exceeding three men, to continue in service twelve months, unless removed by the county court for neglect of duty or improper conduct. None but discreet and sober men shall be appointed patrols; they shall take an oath before a justice of the peace faithfully, impartially, and diligently to perform the duties of patrols. But patrols shall have jurisdiction co-extensive with the whole county.''

This is a general law applying to all county courts, and the point is made that the act in question, which takes away from county courts in counties having a city of the first class the power to divide the county into districts, and to appoint patrols, is violative of section 141 of the Constitution, which provides:

''The jurisdiction of the county court shall be uniform throughout the state, and shall be regulated by general law, and, until changed, shall be the same as now vested in the county courts of this state by law.''

The county court is of ancient origin, and although classed in the judiciary department by the Constitution, and possessing judicial powers, it is not exclusively a judicial tribunal. On the contrary, many other matters not judicial have been vested in that court since the adoption of the first Constitution. This was pointed out in the case of Pennington v. Woolfolk, 79 Ky. 13, where an act of the Legislature was assailed on the ground that

it attempted to confer on the county court a power not judicial in its nature. In discussing the question, the court said:

"But the county court, although classed in the judiciary department by the constitution, and possessing judicial powers, is not an exclusively judicial tribunal.

"We might not be able to sustain this position if compelled to rely alone upon the constitution, and denied the right to look to the practical construction uniformly given to it since the formation of the government.

"But in the light of the unchallenged action of all departments of the government since the adoption of the constitution of 1792 to the present time, we entertain no doubt that the county court must now be regarded, as respects a number of matters local and exceptional in their nature, as excepted out of this provision of the constitution.

"Each of the prior constitutions contained the precise language of our present constitution quoted supra.

"In 1793 (M. & B., 503), the legislature enacted a law making it the duty of the county court 'to take bond and security of the sheriff or collector' of the public revenue, and to appoint two of their own body to settle with such sheriff or collector, and report such settlement to the court. An act of 1796 (M. & B., 504) gave the county court cognizance of the settlement of the accounts of guardians and of admitting deeds to record. It also gave power 'to grant ordinary license, and regulate and restrain ordinaries and tippling-houses;' to purchase land and cause public buildings to be erected, and 'if the court of any county shall, at any time think fit, they are hereby authorized and empowered, at the charge of their county, to cause a ducking stool to be built in such convenient place as they should direct.' An act of 1810 (M. & B., 506), gave that court power to 'lay a county levy covering the amount of claims against such county at the time of laying such levy, or which it was known would become due under engagements for public buildings by the time said levies would be collected and accounted for by the several sheriffs or collectors, adding a reasonable overplus for probable delinquents,' etc.

"By subsequent statutes county courts were empowered to establish roads and ferries, and to fix the rates of ferriage and the charges to be made by innkeepers. To these may be added acts giving the county court power to provide for the poor, and to take measures to prevent the spread of the smallpox, and many others of a similar character which it is not deemed necessary to refer to.

"That the greater part, if not all, of the powers above referred to as having been conferred upon the county court are non-judicial in their nature, will not be disputed; but in no instance of which we are aware was the constitutionality of any of these acts assailed, and certainly none of them were ever pronounced by this court to be invalid."

At the time of the adoption of the present Constitution, the county court, in addition to other powers, was empowered to establish election precincts, and to appoint election officers for each precinct, Gen. Stats., (1888), c. 33, art. 2, sec. 3; article 3, sub-sec. 1, and it can hardly be said that this was not a matter of jurisdiction. As indicative of the sense in which the word *"jurisdiction,"* as applied to county courts, was used in the Constitution, it must not be overlooked that the statutes in force when the present Constitution was adopted, in conferring certain powers on the county court, frequently used the word *"jurisdiction."* An example may be found in section 1, article 16, c. 28, of the General Statutes, which reads as follows:

"County courts have jurisdiction to lay and superintend the collection of the county levy, erect and keep in repair necessary public buildings, bridges, and other structures, and superintend the same; regulate and control the fiscal affairs and property of the county; make provision for the maintenance of the poor, and provide for good condition of the public highways in the county; and to execute all of its orders consistent with law and within its jurisdiction."

As the section of the Constitution in question provides that the jurisdiction of the county courts shall be uniform throughout the state, and shall be regulated by general law, and until changed shall be the same as now vested in county courts, it cannot be doubted that the

390

jurisdiction conferred by the above section of the statutes, which dealt principally with the legislative and ministerial powers of the county court, was of the kind that should be uniform and should be the same until changed. After the adoption of the present Constitution many of the powers declared to be within the jurisdiction of the county court were imposed by general law on the fiscal court, but even the present statute, dealing with the county court, provides that it shall have *jurisdiction* to probate wills, appoint and remove personal representatives, guardians, trustees and committees, curators, and other fiduciaries, to grant tavern, drug, and liquor licenses, and such other jurisdiction as may be conferred upon it by law, section 1057, Kentucky Statutes, thus emphasizing the idea that the jurisdiction of the county court embraces matters of a nonjudicial character. In view of the well-known meaning of the word "jurisdiction," as applied to county courts at the adoption of the present Constitution, we are constrained to the view that the word "jurisdiction," as used in section 141, is not confined to matters judicial, but includes all the powers conferred on those courts whether they be judicial, legislative, or ministerial. Under section 3780, Kentucky Statutes, the county court of every county may divide the county into districts and appoint patrols. This power is jurisdictional, and it may not be taken away from the county court of one county, so long as it remains in the other county courts of the state. It follows that the act in question is unconstitutional. Wherefore, the motion to dissolve the temporary injunction is overruled.