## Community Hospital v. Barren County Fiscal Court et al.

(Decided June 24, 1932.)

W. L. PORTER, JOHN E. RICHARDSON, RICHARD L. GARNETT, and BRENTS DICKINSON, JR., for appellant.

FRANK W. JONES and FRANK E. DAUGHERTY for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The Legislature at its 1920 session enacted chapter 52, page 221, of the session acts of that year, and at its 1924 session it amended and re-enacted sections 1 and 2 of the 1920 act, and which amendment is chapter 88, page 231, of the session acts for that year. As so amended

the statute is contained in sections 938e-1 to and including 938e-6, as designated in the 1930 Edition of Carroll's Kentucky Statutes, excepting the present section therein, numbered 938e-2a. The latter section was enacted, ostensibly as an amendment to the statute as amended by the 1924 act, in 1926, and which is chapter 156, page 721 of the session acts of that year.

The title to the 1920 act reads: "An Act authorizing counties of the State of Kentucky containing cities of second and third class to establish county hospitals and issue bonds for purchase of hospital site, construction and maintenance of same, and providing a tax levy for hospital expenses and maintenance and providing for a training school for nurses in connection therewith." Its section 1 conferred the power and authority upon the fiscal court of designated classes of counties referred to therein, to acquire the hospitals provided for. Its section 2 conferred authority on the fiscal court of such counties to make an order calling an election in the county for the purpose of issuing its bonds to raise the necessary funds.

Its section 3 provided for the issuing and sale of the bonds if the people at the election approved of it. Section 4 related to contracts for work and supplies and material furnished in connection with the hospital, and to its maintenance, etc.; and section 5 prescribed that the hospital when so erected should be under the control and management of the county authorities, while section 6 authorized and directed the fiscal court of such counties to levy and collect taxes within constitutional limits to pay the interest upon and create a sinking fund for the payment of the bonds, as well as for the maintenance of the hospital after it was constructed. As its title indicates, it applied only to counties containing cities of the second and third class.

The 1924 act amended the 1920 one only by extending its provisions to counties containing cities of the fourth and fifth classes. So that, after the taking effect of the amendment, all counties in the commonwealth containing any city of the four classes referred to could, through the voluntary action of its fiscal officers, accept the provisions of the statute and thereby acquire *county* hospitals, which would thereafter be under the control, management, and direction of the authorities of the county.

The 1926 act, while purporting to be an amendment to the 1924 one by adding thereto an additional section, was, in effect, an independent act, but which, though true, is not material to the decision of the question involved. Its entire body (omitting title) reads:

"In order to provide money for the maintenance and furnishing of a county hospital in counties having a city of the fifth class, and in which there is established in such county a 'Community Hospital' (that is a non-dividend paying hospital, constructed by donations, or endowment funds) the county board of health existing under the laws of this Commonwealth in such county or counties embracing a city of the fifth class, is hereby authorized and it is hereby made its duty to make and enter into a contract with the governing authority of such 'Community Hospital' for county purposes in such county until such time as a county hospital is authorized by vote of the people as follows:

"It shall also be the duty of the county board of health of the counties embracing a city of the fifth class, on or before the first day of April, nineteen hundred and twenty-six, and each year thereafter, to contract with the governing authority of such community hospital for the support and maintenance of said hospital and to ascertain and report to the fiscal court of such county, the estimated amount needed for such county hospital purposes for the next year, this annual budget shall be submitted in writing to the county clerk not less than ten days before the first day of April in each year, by the county board of health. And the county clerk shall present this annual budget to the fiscal court when it convenes to make the annual county levy. When this annual budget has been submitted to the fiscal court, it shall be the duty of the fiscal court to provide sufficient funds to pay the said budget, by the levy and collection of a tax, of not exceeding five cents on the one hundred dollars, as a contribution for the county hospital purposes, and for the payment of the budget recommended and demanded by the county board of health as herein provided, and the same shall not be appropriated or used for any other purpose, during the life of the contract herein provided for. And when said funds are collected

by the county treasurer he shall pay the same over to the treasurer or governing authorities of said hospital.''

It is now carried in the 1930 Edition of Carroll's Kentucky Statutes, as section 938e-2a.

At about the time of the enactment of the 1926 act, a movement was on foot to construct and establish a community hospital in or near the corporate limits of the city of Glasgow, Ky. That enterprise was successfully carried out, and a nondividend paying corporation was organized, and the hospital was constructed and equipped with cash donations in the form of stock subscriptions made and paid by charitably inclined persons, both local and foreign, and it was completed and for the first time operated in 1929. The county board of health of the county, pursuant to the mandatory directions given to it by the 1926 act, estimated and reported to the fiscal court that it was necessary for the proper maintenance of the hospital that the county pay to it (by a tax levy not exceeding the maximum amount allowed by the statute of 5 cents on each $100 worth of taxable property in the county) the sum of $7,500, which exceeded the amount that the authorized levy would produce. Such demand and request was made by the county board of health each following year. But, in 1931, the fiscal court declined to levy for that purpose exceeding 1½ cents on each $100 worth of taxable property in the county, and in 1932 it declined to make any levy at all.

Whereupon the hospital in its corporate name filed this action against the fiscal court of the county and its members, seeking a mandatory order to require it to make an additional levy of 3½ cents on the taxable property of the county for the year 1931, and which it had failed to do at the time requested, and also to require it to make the maximum levy allowed by the statute for the year 1932, and which it refused to do as requested by the county board of health. It is manifested in the record and conceded by both sides that the hospital by its charter is not only a nonprofitable one, but that it is required to accept and serve all patients of whatever race who make application to enter it, and who reside within a radius of 35 miles from the city of Glasgow, which includes entirely some surrounding Kentucky counties and parts of others, as well as parts of some counties in the state of Tennessee.

So that, the expenses incurred in operating the hospital are spent for services furnished and rendered as much for persons residing outside of the county as for those residing within it. The petition as amended averred the facts as so outlined with the usual elaboration, and defendants filed a general demurrer thereto, which the court sustained, and upon plaintiff declining to amend, its action was dismissed, and from that judgment it prosecutes this appeal.

There are a number of objections to the validity of the 1926 act (and which is now section 938e-2a of the 1930 Edition of Carroll's Kentucky Statutes) argued in briefs of counsel, and which were also presented to the judge of the trial court, and he declined to expressly determine any of them, except the one that the 1926 act was a special or local one which was not justified under any fair and reasonable classification, so as to exempt it from the inhibition contained in sections 59 and 60 of our Constitution. In so deciding the learned judge of the court prepared and filed a written opinion, the lucidity of which we do not feel that we could improve upon. Its reasoning is so convincing and conclusive as to dissipate all doubt relating to the question involved. It also demonstrates that if there be (and which there is) such a principle in law as an unauthorized classification of the subject-matter of statutes, so as to invade constitutional inhibitions against special legislation, the 1926 act is undoubtedly an example thereof, and for the reason stated we have concluded to adopt parts of that opinion as our own. Such adopted portions read:

"The Community Hospital is a corporation conducting a hospital in the city of Glasgow, a fifth class city and brings this action for a mandamus to compel the Barren County Fiscal Court to levy a tax of five cents on the one hundred dollars for the support and maintenance of the hospital for County purposes, the action being brought pursuant to Chapter 156 of the acts of the General Assembly, approved March 1st., 1926, being sections 938e-1 and subsequent sections of the Kentucky Statutes. The petition sets out a compliance with the provisions of section 938e-2a and that the Fiscal Court refused to make the levy contending that this section of the Act for the support and maintenance of community hospitals is unconstitutional and void and assigns

numerous reasons to substantiate that position or contention.''

The court then put aside all of the urged constitutional objections to the involved act, except ''the contention made that the act is void because it is local or special legislation is in violation of sections 59 and 60 of the constitution.''

The opinion then proceeds:

''The meaning of special or local legislation was explained generally in the case of Jefferson County v. Cole, 204 Ky. 27 [263 S. W. 1114, 1115], and the general purpose of the law was stated as follows in that case; 'Hence laws which apply to and operate uniformly upon all members of any class of persons, places, or things, requiring legislation peculiar to themselves in the matters covered by the laws in question, are general and not special or local. In other words, the foregoing provisions of the Constitution do not forbid classification that is based on natural and reasonable distinctions.'

''The question arises then as to what is a proper classification for the purposes of legislation, a question raised in many cases to invalidate an act of the legislature. In the case of Safety Building & Loan Company v. Ecklar, 106 Ky. 115 [50 S. W. 50, 51, 20 Ky. Law Rep. 1770], the Court said: 'We assert it to be elementary that the true test whether a law is a general one, in the constitutional sense, is not alone that it applies equally to all in a class,—though that is also necessary,—but, in addition, there must be distinctive and natural reasons inducing and supporting the classification. A law does not escape the constitutional inhibition against being a special law merely because it applies to all of a class arbitrarily and unreasonably defined.'

''In Droege v. McInerney, 120 Ky. 796 [87 S. W. 1085, 27 Ky. Law Rep. 1137], the Court of Appeals said: 'When an act is assailed as class or special legislation, the attack is necessarily based upon the claim that there are persons or things similarly situated to those embraced in the act, and which by the terms of the act are excluded from its operation.' In the Ecklar case, above cited, it was held that there was no justification for allowing a

Building and Loan Association to charge interest in excess of the legal rate, while excluding other corporations engaged in lending money from that privilege. In the Droege case it was held that there was no 'distinctive and natural reason' for making the Circuit Clerk a member of the Election Board in counties containing cities of the second class, while in other counties that position is held by sheriffs of the County.

"In Felts, County Attorney, v. Linton, County Judge, 217 Ky. 305 [289 S. W. 312], it was held that section 59 of the constitution had been violated by an act creating a county budget system but exempting from its operation counties having the commission form of government. In Nuetzel, Clerk, v. State Tax Commission, 205 Ky. 124 [265 S. W. 606], the same objection was sustained to an act excepting counties having cities of the first class from the general law making the county clerk the collector of automobile license fees.

"In these and many other similar cases. . . . it has been held that an attempted classification which is not supported by 'distinctive and natural reasons,' including and supporting such classification, is void and, it therefore remains to be seen whether or not in the present case there is a distinctive and natural reason inducing and supporting the classification by which a county containing a city of the fifth class can be compelled to contribute to the support of a community hospital, when all other counties are excepted from the operation of this law. The Court has tried vainly to find some such distinctive and natural reason but has been unable to do so. I say has tried because the court recognizes the great value of the service rendered in any community by a hospital and in particular recognizes and knows the splendid hospital and staff involved in this litigation and is familiar with the wonderful work accomplished by this hospital and the great blessings it has been, and is, not only to Barren county, but to many other adjoining counties as well.

"The only possible reason that occurred to the mind of the Court, as tending to show a distinctive and natural reason for the classification, is that the legislature might have had in mind that counties con-

taining cities of the fourth class or some higher class might be exempted from the operation of this law because of the fact that where such larger cities exist in the county such city would or could maintain and operate a hospital, but an examination of the Kentucky Statutes classifying cities and towns shows beyond any question that no distinctive and natural reasons exist on this account.

"A county having a first class city is not, therefore, a first class county. A county having a fifth class city is not, therefore, a fifth class county. They cannot be classified on that ground alone as to a matter of this character and this attempted classification of counties on the basis of whether or not they contain a fifth class city results in a hopeless scramble and confusion in view of the statutes above mentioned classifying the cities of this Commonwealth. For instance a casual examination reveals that Boyle County contains Danville, a fourth class and Perryville, a fifth class city. Bourbon County contains Paris, of the fourth class and Millersburg of the fifth class. Madison County contains Richmond of the fourth class and Berea of the fifth class. Harlan County contains Harlan of the fourth class and Cumberland of the fifth class. Hopkins County contains Madisonville of the fourth class and Dawson Springs of the fifth class. Webster County contains Providence of the fourth class and Sebree of the fifth class. Jessamine County contains Nicholasville of the fourth class and Wilmore of the fifth class. As I say, a casual inspection reveals this many and no doubt there are numerous other instances of the same kind.

"Any one of the above mentioned counties, although it contains a fourth class city, falls under the operation of this law by reason of the fact that there also happens to be in the county a fifth class city and not only this but although there is a city of the fourth class in this county the hospital could be established in the county in the city of the fifth class and the county and the fourth class city compelled to maintain same, or, going further, the hospital could even be established in a sixth class town in this county or in the country, because under the act it is not necessary for the hospital to be located in the fifth class town in the county but same may be

located at any point in the county which contains a city of the fifth class. The same situation exists as to counties containing cities of the second and third class. Some of these also contain fifth class cities. Therefore numerous counties containing second, third, and fourth class cities fall under the operation of the Act while other such counties are excepted from its operation merely because they contain no fifth class city.

"Going a step further, an examination of the Act, classifying cities and towns, when considered in connection with the last census, reveals that quite a number of fifth class cities have more population than numerous fourth class cities and in particular the city of Glasgow, in which is located the plaintiff Community Hospital in this case, has a larger population than quite a number of fourth class cities. Hence it is seen that there can be no distinctive and natural reason for classification of counties under a legislative act on the basis of whether or not such counties contain a fifth class city and as the court is unable to find any such distinctive and natural reason for the attempted classification made by the Act in controversy, I feel constrained to hold that the section of the Act, relating to Community hospitals in the counties containing a city of the fifth class, is local or special legislation in violation of sections 59 and 60 of the Constitution and void for this reason.

"As further supporting the contention that this section of the Act is local or special legislation, it will be observed that the original act (as first amended) passed by the legislature provided for the establishment and maintenance of county hospitals in counties containing cities of the second, third, fourth and fifth classes. This was the act of 1920 as amended in 1924. The section under which this action is brought providing for the maintenance of community hospitals is an amendment of 1926 and this amendment departs from the purpose of the original Act, which purpose was the establishment and maintenance of county hospitals in counties containing second, third, fourth and fifth class cities. Another reason occurring to the mind of the court, making doubtful the validity of this section of the

act in controversy, is that it is made compulsory on the board of health of the county to contract with a community hospital for its support and maintenance for county purposes without providing any standard or qualification or degree of fitness and without reserving any discretion to the Board of Health as to terms and conditions, it might be thought advisable to the board to impose on the hospital in the making of this contract.

"I have no doubt of the right of the legislature to give the Board of Health authority to make a contract under a valid act with reference to the maintenance of a hospital for county purposes as this is analogous to the Act giving the Board of Education of the County authority either to establish and maintain a county high school or to contract with an existing high school in a graded school district. But it will be noticed that the Act giving such authority to the Board of Education to contract with an existing high school specifies a certain standard for the high school with which the contract is to be made, namely, that it shall be a high school of the first class, which, in turn, is defined as one maintaining a four years course of study, which shall be prepared by the State Board of Education.

"Under the section of the Act in controversy no standard whatever is prescribed for a community hospital with which the Board of Health is compelled to make a contract and no discretion is left to the Board of Health as to these standards or the fitness of the hospital and as to whether or not the contract shall be entered into. Consequently, any endowed hospital, no matter whether it is fit for the purpose or not and regardless of the standard of its work, and although located in any part of the county, may compel the county to make a contribution to its maintenance, the only limit being that this contribution cannot exceed five cents on the one hundred dollars of taxable property.

"From the reasons indicated it is the opinion of the Court that the section of the Act under which the proceeding for mandamus is brought is void and judgment may be entered denying the mandamus and dismissing the petition."

Many additional cases from this court (as well as text authorities and foreign opinions) could have been cited by the trial court in support of its conclusions, a very late one being Atherton et al. v. Fox et al., (a temporary injunction opinion and not to be reported), and also Jones v. Russell 224 Ky. 390, 6 S. W. (2d) 460. All the cases from this and other courts hold that classification for legislative purposes, in order to relieve the statute from the constitutional inhibition of class or special legislation, must be based upon "distinctive and natural reasons" supporting the classification. They also hold that it is the duty of courts to uphold legislative enactments relating to classified subjects in all cases where the classification is based upon any such distinctive grounds. On the contrary, the opinions hold with equal unanimity that where the classification is purely arbitrary and without any "distinctive and natural reasons" to support it, it is the duty of courts to so declare, and all of which is in conformity with the inescapable directions contained in the sections of the constitution forbidding special and local legislation. The constitutional convention in adopting such sections evidently meant to accomplish some purpose, and also meant to not have that purpose thwarted and destroyed by an interpretation having no conceivable substance to support it and based on no "distinctive and natural reasons."

The 1920 act as amended by the 1924 one included counties containing a city of the fifth class, and the 1926 amendment, which only is involved in this case, attempts to subdivide such counties and to reclassify them and to make as one of such subclasses, counties containing a city of the fifth class "and in which there is established in such county a 'Community Hospital' (that is a non-dividend paying hospital, constructed by donations, or endowment funds)" That language would not include a county containing a city of the fifth class, but in which there was an established hospital, if it was not a community one that paid no dividends, or was not constructed by donation or endowment funds. On the other hand, the questioned statute would include counties containing a city of the fifth class and wherein such a community hospital was established, although the same county might also contain cities of the other higher classes, and in which hospitals were established in a different way and manner. We, therefore, reluctantly con-

clude as did the learned judge of the trial court, that the classification attempted to be made in the 1926 act was and is without the distinctive and natural reasons necessary to support it as a general law.

We have carefully examined the cases cited and relied on by learned and industrious counsel for appellant, as well as the various statutes to which they refer, some of which have been before this court and their validity upheld, while others have not found their way here. From such investigation we are constrained to the conclusion that no unbiased mind can read and analyze the cases, and the approved prior statutes referred to, without discovering a very substantial and material distinction between them and the one involved in this case. The classifications therein made had some relevant substance for their foundation pointing to and supporting the reason for their approval by us, or for making them. Here we can discover nothing approaching substantiality for the attempted differentiation between all counties containing a fifth class city, and to a subdivision of them into two or more classifications dependent upon whether or not there had theretofore been established in them a community hospital though located elsewhere than in the fifth class city. The classification is too strained and too much wanting in "distinctive and natural reasons" to be accepted by us. In so concluding we expressly refrain from intimating any opinion concerning any of the other grounds urged against the validity of the statute.

Wherefore, the judgment is affirmed.

The whole court sitting, except Judge RICHARDSON, who was disqualified.