## Shaw v. Fox, County Judge.

(Decided Dec. 6, 1932.)

MADDOX PARMALEE and HARDIN H. HERR for appellant.
ARTHUR B. BENSINGER, HARRIS COLEMAN and EMMET R. FIELD for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

The General Assembly at its 1932 session passed an act (chapter 147) which became a law without the signature of the Governor, entitled:

"An Act to provide for the more efficient and economical administration of justice in courts of justices of the peace in counties containing a population in excess of two hundred fifty thousand (250,000), and to reduce the number of magisterial districts therein, by amending and re-enacting section one thousand seventy-nine (1,079) of the Kentucky Statutes; to provide for the costs and fees thereof and for the payment of the same to the county; for certain reports relating thereto; to fix the compensation and duties of justices of the peace, constables and recorders therein; for the appointment and payment of recorders and assistants, defining their duties and requiring bonds therefrom, with surety; defining certain duties of constables and deputy constables, requiring bonds therefrom, fixing the places of holding such courts and providing for the equipment and maintenance of such places; fixing the filing fees, and providing for rules of practice in said courts and fixing penal-

ties for the violation by said officers of their duties.''

James S. Shaw, a resident, taxpayer, and voter of Jefferson county, Ky., instituted this action in the Jefferson circuit court, challenging its constitutionality, and asked an injunction against the county judge of the county, permanently restraining him from dividing the county into three magisterial districts, or otherwise recognizing its validity. A summary of its sections is: Section 1 provides when it takes effect; section 2, that the money collected by justices, constables, deputy constables, shall go to the general fund of the county; section 3, the justices shall receive a salary to be paid by the county; section 4, authorizes the employment of clerks or recorders to be paid a salary by the county in lieu of all other compensation; the fees allowed by law to the justices, constables, and deputy constables shall be turned over by them to the county commissioners or fiscal court; section 5 provides how the records of the justices court shall be kept; section 6, for the delivery of all fees to the recorders by the justices, constables, and deputy constables; section 7 requires a report thereof by the recorders to the fiscal court, and that the recorders shall deposit the funds at certain times in the bank; section 8 fixes the liability of the recorders and deputy recorders; section 9 provides for the payment of constables and deputy constables by the fiscal court; section 10 requires the fiscal court to designate a place whereat in each magisterial district in the county the justices of the peace shall hold all sessions of their courts, and where the records of their offices shall be kept, and that the fiscal court shall furnish the offices with the necessary equipment; section 11 requires the justice of the peace to collect $1 in each original civil action or proceeding at the time of its commencement, as costs to be turned over to the fiscal court; section 12 provides for the justices to make rules of the courts consistent with the civil and criminal code of practice to be entered on the records of the courts; sections 13 and 14 fix the punishment of the justices, constables, deputy constables, recorders, and deputy recorders for violating any provision of the act; section 15 provides that the act shall apply only to counties having 250,000 population, and authorizes and directs the dividing of the county into three magisterial districts; section 16

provides for partial invalidity; section 17 repeals conflicting laws.

The grounds of Shaw's attack are: It is a local or a special or class legislation within subsection 1, sec. 59, subsec. 18 of section 59; subsection 29 of section 59 of the State Constitution, and that it also violates sections 51, 60, 106, and 246 thereof.

In the consideration of his presentation, it must be recognized that there is an established distinction between a special and a local law and class legislation and a general law.

Special legislation is thus defined in Jefferson County v. Cole, 204 Ky. 27, 263 S. W. 1114:

"'Special legislation' is such as relates either to particular persons, places, or things, or to persons, places, or things which, though not particularized, are separated by any method of selection from the whole class to which the law might, but for such legislation, be applied."

A "local law" is one whose operation is confined within territorial limits other than those of the whole state, or any properly constituted class or locality therein.

"Class legislation" is such as concerns and operates upon a portion of a particular class of persons or things, and therefore partakes of a private act.

A law is general when it is by its terms, intendment, and phraseology, uniform in its operation, and operates alike and equally on all persons or things, as a class, throughout the state, under the same circumstances. The test in determining whether a law is special or local or general, is, "Does it embrace all of the class to which it relates?" Whether it is the one or the other is not to be determined by its form, but its substance. King v. Com., 194 Ky. 150, 238 S. W. 373, 22 A. L. R. 535; Ross v. County Board, 196 Ky. 366, 244 S. W. 793; Jefferson County v. Cole, 204 Ky. 27, 263 S. W. 1114. The mere fact that its practical effect is special, or local, does not necessarily bring it within the constitutional provisions against special, or local or class legislation. Com. v. Thomas' Adm'r, 140 Ky. 789, 131 S. W. 797.

In Sutherland on Statutory Construction (2d Ed.) sec. 203, it is written:

"Whether or not an act is class legislation, or whether or not it is a general or special law, depends fundamentally upon a question of classification. Where an act is assailed as special or class legislation, the attack is necessarily based upon the claim that there are persons or things similarly situated to those embraced and which by the terms of the act are excluded from its operation. The question then is whether the persons or things embraced by the act form by themselves a proper and legitimate class with reference to the purpose of the act. It is agreed on all hands that the constitution does not forbid a reasonable and proper classification of the objects of legislation. The question is, what is reasonable and proper in the premises?"

Class legislation is permissible under our constitution, and is repugnant thereto only when it comes within either of the terms, special or local law or class legislation, as above defined. State Racing Commission v. Latonia Agricultural Ass'n, 136 Ky. 174, 123 S. W. 681, 25 L. R. A. (N. S.) 905; Com. v. Ward, 136 Ky. 146, 123 S. W. 673; Douglas Park Jockey Club v. Talbott, 173 Ky. 685, 191 S. W. 474; Jewell Tobacco Warehouse Company v. Kemper, 206 Ky. 667, 268 S. W. 324.

"Classification is a necessary feature and power of legislation, as it is impossible for any extensive code of laws to apply to every person or subject in the state." City of Louisville v. Com., etc., 134 Ky. 488, 121 S. W. 411, 413.

The power of classification for legislative purposes rests with the Legislature, subject to the constitutional limitation or restriction that it must rest on some natural and reasonable difference which appears reasonable and just in relation to the act in respect to which the classification is proposed. The Constitution permits the Legislature to indulge in making classifications of subjects of legislation for the purpose of making different classes, for the meeting of different contingencies, naturally requiring different legislation in order that the Legislature may adopt general legislation to meet the needs of the people, to promote some public object, or the welfare or interest of the general

public. Smith et al. v. Board of Trustees, 171 Ky. 39, 186 S. W. 927; Jones v. Russell, 224 Ky. 390, 6 S. W. (2d) 460. Such classification will not be disturbed by the court unless so manifestly unfounded, arbitrary, or unjust as to impose a burden upon, or exclude, one or more of a class, without reasonable basis in fact. City of Louisville v. Coulter, 177 Ky. 242, 197 S. W. 819, L. R. A. 1918A, 811; Mansbach Scrap Iron Co. v. City of Ashland, 235 Ky. 265, 30 S. W. (2d) 968; Jones v. Russell, supra.

No general rule can be stated by which a reasonable basis of Legislative classification may be predicated, nor can it always be determined by analogy. The basis of classification of every act must be considered singly in the light of certain fundamental principles which are generally accepted by the courts. In ascertaining and determining the constitutionality of an act, it is a fixed rule of the courts to resolve all doubts in its favor (Coleman v. Hurst, 226 Ky. 501, 11 S. W. (2d) 133); nor will the courts inquire into and consider the practicability, the expediency, or the wisdom of the enactment. Coleman v. Hurst, supra. The only question to be determined by the court is one of constitutional inhibition, limitation, or restriction. State Budget Commission v. Lebus, 244 Ky. 700, 51 S. W. (2d) 965. Our Constitution does not delegate the power to make, nor does it prohibit the making of, classifications of subjects by the Legislature for legislative purposes, but merely prescribes inhibitions, limitations, or restrictions of the Legislature's power when making the classifications for legislative purposes (Rouse v. Johnson, 234 Ky. 473, 28 S. W. (2d) 745, 70 A. L. R. 1077), and the court is authorized to declare its classification invalid only when it contravenes or transgresses one or more of these inhibitions, limitations, or restrictions. State Board of Election Commissioners v. Coleman, 235 Ky. 24, 29 S. W. (2d) 619. The court is not at liberty to declare a legislative classification unconstitutional on the ground it violates public policy, as it is for the Legislature to determine the public policy so far as the state laws are concerned, and its determination thereof is only limited by the Constitution of the state and of the United States. Fiscal Court v. Pendleton County, 240 Ky. 589, 42 S. W. (2d) 885; Peak, Judge, v. Akins, 237 Ky. 711, 36 S. W. (2d) 351; Stevenson v. Hardin et al., 238 Ky. 600, 38 S. W. (2d) 462; Sullivan

v. Brawner, Sheriff, 237 Ky. 730, 36 S. W. (2d) 364; Kenton & Campbell Benevolent Burial Ass'n v. Quinn et al., 244 Ky. 260, 50 S. W. (2d) 554.

With these rules of construction in mind, we shall determine whether the act under consideration is a special, local or class legislation, or a general law, and if it is the latter, is it one the Constitution authorizes?

To support his reliance on subsection 1 of section 59, subsection 18 of section 59, and subsection 29 of section 59, and section 60, the appellant cites and relies upon McHenry v. Winston, 105 Ky. 307, 49 S. W. 971; Neutzel, County Clerk, v. State Tax Commission, 205 Ky. 124, 265 S. W. 606; James, Auditor, v. Barry, 138 Ky. 656, 128 S. W. 1070; Droge v. McInerney, 120 Ky. 796, 87 S. W. 1085, 27 Ky. Law Rep. 1137; Fox v. Petty, 244 Ky. 385, 51 S. W. (2d) 260; Community Hospital v. Barren County, 244 Ky. 672, 52 S. W. (2d) 896; Atherton v. Fox, County Judge, 245 Ky. 718, 54 S. W. (2d) 11. An examination of these cases discloses that the basis of the attempted classifications which were therein declared invalid is not analogous or comparable to that in the present one. The preamble to the act under consideration is in this language:

"Whereas, in counties containing a population in excess of two hundred fifty thousand (250,000) intensive industrial and commercial development and consequent density of population have combined to produce definitely changed conditions of life, by reason of which the demands upon such courts in such counties are continuous, voluminous, and exacting, and by reason of which justices of the peace in such counties have become primarily judicial officers, as distinguished from the fiscal character of said officers elsewhere in this State, and by reason of which the existing system for the administration of justice within the jurisdiction of such courts is now wholly inadequate."

The act itself connotes that the Legislature, in making the classification to which its provisions relate, considered both the population and the facts recited in the preamble as the basis of the classification. The court is without power to inquire into the existence or the truth of the facts recited in the preamble. It is our duty to assume the existence of any other facts not embraced in the preamble, essential and necessary to

sustain a constitutional classification, was known to the Legislature and motivated it to make the classification and to adopt the act; the contrary not appearing from the substance of the act, nor its preamble.

The population of Jefferson county is estimated to be 365,000, of which about 50,000 or 60,000 are wage-earners, with between 200,000 and 300,000 dependents. To live and support their families they require an extension of credit upon peculiar terms to meet their needs and abilities to pay. They occupy rented property; the rent payable by the week. The county is the center of extensive industries, commerce, manufactures, transportation, retail and wholesale businesses. There are within the county between 70 and 80 small cut-rate loan offices, engaged in making weekly and periodical loans, payable in installments on charges varying from 15 per cent. per annum to 200 per cent. per annum. The total loans of such offices annually exceed $1,000,-000. It is disclosed by the record that in 1929, 18,000 actions were instituted in the court of one justice of the peace of Jefferson county; 8,000 in another during a period of six months; 23,000 in the court of one justice of the peace in 1931; 73,000 actions were commenced, tried, and judgments rendered in the courts of the justices of the peace in 1931; 30 writs of forcible detainer were issued in one day, and approximately 2,000 garnishments in one month in 1932.

It should be presumed that the Legislature at the time of its enactment of the act herein considered had knowledge of these stupendous facts, as well as some knowledge of the character and number of actions instituted in the justices' courts, during these years, in the other counties of the commonwealth, with a population of less than 250,000. The essential object of the creation and existence of all courts is not only to furnish an opportunity for, and a method of, a trial, but to accord as far as it is humanly possible an absolutely fair and impartial trial to the litigants in every case. Wheeler v. Schulman, 165 Ky. 185, 176 S. W. 1017. The mere statement of the number of cases instituted and disposed of in these justices' courts during such short periods of time is indubitable proof that justice, the acme of the law, was substantially, if not literally and completely, denied the litigants in most, if not in, every case. The population and the facts and conditions presented undoubtedly authorized and justi-

fied the Legislature to make the classification and adopt the act to avoid or prevent, in the future, the evils thereof.

Such "A classification is not to be pronounced arbitrary because it goes on practical grounds and attacks only those objects that exhibit or foster an evil on a large scale. It is not required to be mathematically precise and to embrace every case that theoretically is capable of doing the same harm. 'If the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied.'" Chief Justice Holmes. (See dissenting opinion in Weaver v. Palmer Bros. Co., 270 U. S. 402, 46 S. Ct. 320, 323, 70 L. Ed. 654). See, also, Jefferson County v. Cole, 204 Ky. 27, 263 S. W. 1114.

Section 106 of the State Constitution requires "The fees of the county officers shall be regulated by law." It is the contention of Shaw that this clause of section 106 requires a uniform system of fees throughout the state, and precludes legislative classification of counties on a population basis as the means of enacting a general law fixing the fees of county officers, applicable to a local situation. Such construction of similar language of the Constitutions of other states has been given by courts of those states. See Mobile County v. Bryne, 218 Ala. 5, 117 So. 83; State ex rel. Shelby County v. Stewart, County Registrar, 147 Tenn. 375, 247 S. W. 984; State v. Lee, 319 Mo. 976, 5 S. W. (2d) 83, 91; Henderson v. Koenig, 168 Mo. 356, 68 S. W. 72, 57 L. R. A. 659; State v. O'Neal, 99 Fla. 1053, 128 So. 489; Stripling v. Thomas, 101 Fla. 1015, 132 So. 824; Womack v. Carson (Tex. Civ. App.) 38 S. W. (2d) 184; Smalley v. Bushmiaer, 181 Ark. 874, 31 S. W. (2d) 292; State v. Riedel (Mo. Sup.) 46 S. W. (2d) 131; Anderson v. Board of Public Instruction (Fla.) 136 So. 334; Simpson v. Matthews, 184 Ark. 213, 40 S. W. (2d) 991; State v. McCann (Mo. App.) 47 S. W. (2d) 95; State v. Clark, 275 Mo. 95, 204 S. W. 1090; Excise Board, etc., v. Chicago, R. I. & P. Ry. Co., 155 Okl. 34, 7 P. (2d) 902; Henry, County Treasurer, v. Wilson, 224 Ala. 261, 139 So. 259; Davis v. Jasper County, 318 Mo. 248, 300 S. W. 493; Cannon v. May, 183 Ark. 107, 35 S. W. (2d) 70.

It will be observed on an examination of these cases

that the legislative classifications therein were premised exclusively on population. The additional grounds hereinbefore pointed out, and which the Legislature regarded when making the classification in the present case, did not exist in any of them.

These foreign cases may be distinguished in another particular from the present one on another valid ground which was not considered in any one of the foreign cases. At the time of the enactment of the present act there was in existence a general provision of our Statutes authorizing a justice of the peace to tax and collect costs against a defendant charged with a misdemeanor, and tried by him. In Tumey v. Ohio, 273 U. S. 510, 47 S. Ct. 437, 71 L. Ed. 749, 50 A. L. R. 1243, it was held that a statute providing for such system of fees in criminal cases was a violation of the Fourteenth Amendment to the Constitution of the United States, and therefore invalid. In Wagers v. Sizemore, 222 Ky. 306, 300 S. W. 918, this court declared that the opinion of the United States Supreme Court in Tumey v. Ohio, supra, was binding on this court in view of section 228 of our Constitution. The question as to the validity of a somewhat similar provision of the Statutes authorizing a justice of the peace to tax and collect as costs in civil cases the statutory schedule of fees (section 1726, Ky. Stats.), has not been determined by this court as has been the section (1731) authorizing the collection of such fees in criminal cases. But considering this provision (section 1726) valid, the fact is, under the opinion of the United States Supreme Court in Tumey v. Ohio, and of this court in Wagers v. Sizemore, a justice of the peace cannot legally tax as costs and collect of a defendant in a criminal case, convicted in his court, any fee whatsoever otherwise than by agreement, acquiescence, and grace. It is to be presumed that the Legislature was mindful of this status of the fee system authorized by our Statutes at the time of the enactment of the present act, and endeavored by it to remedy such situation in counties containing a population of 250,000, or over. Shaw singles out and challenges certain sections of the act, one of which is the section providing that justices of the peace, the recorders or the clerical assistants to the justices, and the constables and deputy constables shall each receive a fixed, certain salary, payable out of the fund of the county; whereas sections 1726-1731 continue in exist-

ence the fee system in all other counties of the state. There is no allegation in the petition that the fees of justices of the peace and constables in counties having a population of 250,000 or more, when collected in accordance with the act, will not equal the amount of the salaries which the act requires to be paid by the fiscal court. However, considering the number of cases annually tried in justices' courts, and the schedule of fees prescribed by sections 1726-1731, Ky. Statutes, and estimating the fees of the justices, constables, and deputy constables, in each case tried in the year 1931, based upon their services in each case, from the commencement of the action or prosecution to the rendition of a default judgment, their aggregate fees in the 73,000 cases will equal, if they will not exceed their salaries, including the salaries of the recorders or the assistants to the justices, which will be paid them annually out of the fund of the county in accordance with the provisions of the act. If so, admittedly neither Shaw nor any other taxpayer is affected by this provision. It is a universally recognized rule that one unaffected by an unconstitutional provision of a statute may not question its constitutionality. Brown v. Smart, 145 U. S. 454, 12 S. Ct. 958, 36 L. Ed. 773; Brown-Forman Co. v. Com. of Kentucky, 217 U. S. 563, 30 S. Ct. 578, 54 L. Ed. 883; Walsh v. Columbus, H. V. & A. R. Co., 176 U. S. 469, 20 S. Ct. 393, 44 L. Ed. 548; Smiley v. Kansas, 196 U. S. 447, 25 S. Ct. 289, 49 S. Ct. 546. The officers hereafter elected under the act cannot complain of the section limiting their salaries to less than $5,000. Sections 161 and 235 of the Constitution forbid the changing of the salary of an officer during the term for which he is elected. Webster County v. Overby, Sheriff, 240 Ky. 461, 42 S. W. (2d) 707. The present act in no way transgresses either of these sections, as it only undertakes to fix the salaries of the officers elected under it. It cannot be doubted that the Legislature has the constitutional power by general law to fix the salary of an officer before the commencement of his term of office. Hurt v. Morgan County, 166 Ky. 364, 179 S. W. 255. As to his objection to the section authorizing the appointment of recorders or clerical assistants to justices of the peace, section 107 of the Constitution authorizes the Legislature to provide by general law, such as the act under consideration, for the election or appointment, for a term not exceeding four years, of such county or district, ministerial or

executive officers as from time to time may be necessary. Rouse v. Johnson, 234 Ky. 473, 28 S. W. (2d) 745, 70 A. L. R. 1077. No argument, reason, or authority has been presented showing this section of the Constitution does not authorize the creation of the office of recorders or clerical assistants to justices of the peace and their appointment to the office and the payment of their salaries by the fiscal court. Rouse v. Johnson, supra, sustains the validity of this section. The appellant argues that when the act is tested by section 246 of the Constitution of Kentucky, it is invalid. He attempts to sustain this insistence by the statement that each justice of the peace and constable in every county of the state, other than Jefferson county, may receive annually a salary of $5,000, but as to Jefferson county the act limits each of them to a salary less than $5,000. It is not perceptible that his constitutional rights are prejudiced thereby. It is urged that the provision requiring the payment of $1 on the commencement of an action in the justice's court is constitutionally invalid. Section 1720, Ky. Statutes, constains a similar provision requiring the payment of a $5 fee on the filing of an action in the circuit court. It was held valid in Harbison, Clerk v. George, 228 Ky. 168, 14 S. W. (2d) 405. Finally, it is argued that the act contravenes section 51 of the Constitution, which requires the subject of the act to be expressed in its title. A mere reading of the title and a casual glance at the provisions of the act, in the light of the many opinions of this court construing titles of other acts, sufficiently show the fallacy of this insistence. All of its provisions relate to the same subject, stated in the title, and are naturally connected therewith. No one of them is foreign to the subject expressed in the title. Board of Penitentiary Commissioners v. Spencer, 159 Ky. 255, 166 S. W. 1017; Thompson v. Com., 159 Ky. 8, 166 S. W. 623; Campbell v. Com., 229 Ky. 264, 17 S. W. (2d) 227, 63 A. L. R. 932; Com. v. Florence, 192 Ky. 236, 232 S. W. 369; Com. v. Robinson, 192 Ky. 374, 233 S. W. 791; Fiscal Court v. Pendleton County, 240 Ky. 589, 42 S. W. (2d) 885; Earhart v. Middendorf, 234 Ky. 78, 27 S. W. (2d) 657; Estes v. State Highway Commission, 235 Ky. 86, 29 S. W. (2d) 583; Guess v. Linton, 236 Ky. 87, 32 S. W. (2d) 718; State Board of Health v. Willman, 241 Ky. 835, 45 S. W. (2d) 458.

It is not claimed that the act under consideration violates the Constitution of the United States.

Tested by the established principles as herein stated, and as they have been often reiterated by this court in many like cases, it is our conclusion that the classification, as made by the act here presented, was abundantly authorized by, and that no one of its provisions contravenes, infringes, or trespasses upon, either subsection 1 of section 59, or subsection 18 of section 59, or subsection 29 of section 59 or section 51; section 60; section 106, or section 246 of, the Constitution of our State.

For the reasons indicated, the judgement is affirmed.

Whole court sitting.