## Smith, et al. v. Board of Trustees of Shelby Graded School District, et al.

(Decided June 16, 1916.)

### Appeal from Shelby Circuit Court.

1. Statutes—General and Special or Local Laws.—An act of the legislature is not necessarily local and, therefore, violative of section 59 of the constitution when applicable only to a class of subjects or objects; provided the classification is not unreasonable or arbitrary.

2. Statutes—General and Special or Local Laws.—The classification for legislation of "Special Act" graded schools having an endowment fund is not an arbitrary or unreasonable classification, as there are many such schools in the state to which such a law is applicable.

3. Elections—School Elections—When May be Held.—School elections for the purpose of bonding the district to construct, remodel and repair the buildings of the district, and otherwise adequately equip the school, may be held on any day after being properly called, other than the general election day; and they are not invalid because of female voters having the qualifications prescribed by law, participating therein; nor is it required that the voting in such elections shall be by ballot, as it is competent for the voting to be viva voce.

BEARD & PICKETT for appellants.

WILLIS, TODD & BOND for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

By a special act of the Kentucky Legislature approved March 10, 1871, the Shelby Graded School District in Shelby county was created. The district included the town of Shelbyville and contiguous territory around it not to exceed a distance of three miles from the court house located in that town. Prior to the passage of this act there was being conducted in the town of Shelbyville a school known as St. James' College, the buildings and grounds of which belonged to the city of Shelbyville. In the act creating the graded school district, the board of trustees of the town of Shelbyville, was authorized and empowered in the manner specified in the act to sell the land constituting the grounds of St. James' College, except two acres upon which the buildings stood. They were also further authorized and empowered to expend in the way of repairing the buildings from the proceeds of the sale of the ground, a sum not to exceed $3,000.00, and the balance of the proceeds was to be turned over to the board of trustees of the graded school, to be held by it as an endowment fund for the school. This special act was amended by acts of the legislature at its sessions in 1880, 1882 and 1884, but these amendments have no material bearing upon the question presented for determination in this case. The fund arising from the sale of the land provided for by the special act of 1871, after making the repairs therein provided for, amounted to something over $12,-000.00; but the act creating the school district and authorizing the sale of the land to produce the fund, prohibited the trustees of the graded school from using any part of it, but required that it should be invested or handled so as to produce an income, and the trustees of the school were authorized to expend for the benefit of the school only the dividends or income from the fund. The resources of the graded school district arising from local taxation, together with the school money received from the state and the income from the endowment fund, were not sufficient to defray the expenses of the school and maintain the buildings in repair or adequate for the accommodation of the constantly increasing number of pupils.

As this character of graded school was not included in chapter 260, article 10, sections 124-125 of the acts

of the legislature of 1891-2-3, and as it is impossible to
further conduct the school or to accommodate the pupils
therein (which are gradually increasing), the legisla-
ture at its 1916 session, passed an act entitled, ''An act
for the benefit of graded schools under special charters
and having an endowment fund,'' being chapter 112, acts
1916, page 673.    This act provides in substance that
any graded school district created by special act and
having a school fund other than that provided by gen-
eral law, shall have the power to issue the bonds of
such school district with coupons attached, not to ex-
ceed the sum of $50,000.00, and bearing five per cent.
interest, payable semi-annually.    It provides that the
bonds shall be in the denomination of $100.00 and
$500.00, at the discretion of the board of trustees and
to be paid within twenty years from the date of their
issual, with the privilege, however, of the board of trus-
tees to pay them or any of them, if it sees proper,
within ten years after they are issued.    The act provides
for the levy of an annual tax to pay the interest and
create a sinking fund for the payment of the bonds not
to exceed twenty-five cents on the $100.00 of taxable
property in the district.    But it is further provided by
the act that before the board of trustees should issue
such bonds the question as to whether or not they
should be issued should be submitted to the legal voters
of the district at an election to be held therein after
due notice, as provided by the act, had been given, and
if at such election two-thirds of the voters of those par-
ticipating therein should favor the issual of the bonds
then the trustees were authorized to issue them as pro-
vided in the act.    An emergency clause therein made the
act take effect from and after its passage.

On April 18, 1916, the school board of the Shelby
Graded School District called an election to be held at
the court house in Shelbyville on May 27, 1916, for the
purpose of determining whether or not the school board
should be empowered to issue bonds of the district to
the amount of $50,000.00, and to collect an annual tax
of ten cents on each $100.00 of taxable property therein
for the purpose of paying the interest on and finally
liquidating the bonds.    This election was called in strict
conformity to the provisions of the law and at it there
were cast in favor of issuing the bonds 457 votes and
against the proposition 64 votes.    It was specified in

the order calling the election as well as in the question submitted to the voters that the purpose of issuing the bonds was for "building and equipping a high school and in order to relieve the congestion now existing in said graded school district and to furnish reasonable accommodations and facilities to the teachers and pupils in said school district." The result of the election was duly canvassed and certified as required both by the special act and by the general school law.

After the certificate of election was duly recorded and the board of trustees of the graded school were taking steps looking to the issuing of the bonds, this suit was filed by the appellants, taxpayers in the district, for themselves and all other taxpayers therein against the board of trustees of the graded school and the individual members thereof, seeking to enjoin the defendants from issuing the bonds and to enjoin the chairman and secretary of the board from signing any such bonds and to enjoin them from expending any of the funds of the district in having any of the bonds engraved or otherwise prepared for signature. The only grounds alleged in the petition for the relief sought is that the issuing of the bonds would create an indebtedness "all of which is illegal and without authority of law and contrary to the constitution of this state and the statutes thereof." It is furthermore averred that the indebtedness would exceed the income and revenue provided for the fiscal year 1915-1916. The answer admits practically all of the allegations of the petition except a denial that the issuing of the bonds would be contrary to either the constitution or the statutes. It furthermore avers the necessity of constructing new buildings to accommodate the pupils of the district inasmuch as one of the buildings theretofore used in connection with the school was a rented one and that the lease had expired and could not, because of the facts therein stated, be renewed. Furthermore, that the old school buildings were very much dilapidated and entirely inadequate to accommodate the necessities of the school. A demurrer to this answer was overruled and plaintiffs declining to plead further their petition was dismissed and they have appealed to this court.

We have not been favored with a brief by appellants and there is no fact pointed out to us to show wherein the act in question or the election held thereunder vio-

lates any provision of the constitution or antagonizes any provision of law. The legislature, since the adoption of our present constitution, has recognized graded schools created by a special act passed before the adoption of the constitution as belonging to a different class of graded schools from those provided for under the provisions of section 4464 of the Kentucky statutes. This distinction is recognized in the act of 1891-2-3, *supra*, and is likewise recognized in subsection 2 of section 4426a (act of March 24, 1908), wherein it is said: "The provisions of this act shall not apply to any graded school district created by special act and having a school fund other than that provided by general law." In various other instances the legislature has recognized this distinction since the adoption of the constitution. The same is true with this court, for in the case of Board Trustees Erlanger Graded Common School District, et al. v. Tate, 155 Ky. 296, it is said:

"It appears from the act, as well as from the general school law, that there are in the state two classes of graded schools, one being established and operating under special acts of the legislature, and the other class being established and operating under the general laws of the state found in sections 4464-4500 of the Kentucky Statutes."

That opinion had under consideration the question of whether a graded school district organized in 1903 under the general school law could take advantage of the provisions of an act passed in 1912, the title to which was: "An act to empower the board of trustees of graded schools operating under special charters, known as special act schools, to levy tax for maintenance." This court in that opinion determined that a graded school so organized under the general law was not included within the provisions of that act, although the terms of the act were broad enough to do so, for the reason that the title limited the provisions of the act to "Graded schools operating under special charters," and that graded schools created under general law were not germane to that title. It recognized, however, the validity of the act in so far as it applied to graded schools created and operating under special charters when it said:

"We see no escape from the conclusion that *so much* of the act in question as undertakes to authorize the

trustees of *graded schools operating under the general laws* of the state, to levy the taxes enjoined, is violative of section 51 of the constitution."

From what has been said, it will be seen that both the legislature and this court acknowledge that graded schools created by a special act of the legislature before the adoption of the constitution constitute a class by themselves. The question then is, whether the act of 1916, and now under consideration, applicable as it is to such "special act," created graded schools having an endowment fund, violates the provisions of section 59 of the constitution. In other words, whether it is a special or a general law.

The rule is universal that an act of the legislature is not local if its terms are applicable to all of the objects or things composing the class of objects or things to which the act relates; provided, the classification of such objects and things are not unreasonably and arbitrarily made. It is so stated in Sutherland on Statutory Construction, vol. 1, sec. 203, when it is said:

"It is agreed on all hands that the constitution does not forbid a reasonable and proper classification of the objects of the legislature."

This court in Winston, Commissioner, &c. v. Stone, Auditor, 102 Ky. 423, had under consideration the validity of an act, general in its terms, but actually applicable only to the county of Jefferson, it being the only county in the state having a population as much as 75,000, and the act under consideration there being limited to such counties. This court, however, held that the act there involved was not a local or special one but a general one. In the opinion it is said:

"It may be a fact that Jefferson county is the only county in the state having a population in excess of 75,000, but the statute in question would apply to all counties of that class within the state, and is clearly within the principles announced in the two decisions hereinbefore referred to."

The two opinions referred to were: Stone, Auditor v. Wilson, 19 Ky. Law Rep. 126; Commonwealth, &c. v. E. H. Taylor, Jr. Co., 101 Ky. 325. See also Safety B. & L. Association v. Ecklar, 106 Ky. 115; Johnson v. City of Fulton, 28 Ky. Law Rep. 569; James v. Barry, 138 Ky. 656; Commonwealth v. Thomas, 140 Ky. 789,

and many others found in notes to section 59 of the constitution, vol. 1, Ky. Statutes.

In view of the fact that there are many graded school districts in the state of the class to which the Shelby Graded School District belongs to each of which the act in question is applicable, and the further fact that the legislature of the state on numerous occasions since the adoption of our present constitution has recognized specially created graded schools as constituting a distinct class of such schools, and in the light of the opinion of this court in the Tate case, *supra,* we cannot escape the conclusion that the act involved and under which the election was held is not a special one, but on the contrary, is a general act applicable to all graded schools within the state coming within the designation of those stated in the title to the act and that it, therefore, does not contravene the provisions of section 59 of the constitution. It cannot be said that the classification made by the legislature in passing the act under consideration was either unreasonable or arbitrary because it is not applicable alone to one particular place or object; for, by its terms, it applies to all of the places or objects of the same class throughout the state, and it is a known fact that there are many of them.

We have said this much with reference to the act under which the election was held without noticing section 4481a of the Kentucky Statutes, which itself seems to authorize the trustees of the Shelby Graded School District to take the action drawn in question here. But inasmuch as we have reached the conclusion that the act of 1916 is valid, we will not express an opinion as to the right to hold the election under sections 4481 and 4481a of the Kentucky Statutes. The incurring of the indebtedness does not violate section 158 of the constitution even if that section is applicable to school indebtedness (which is not decided), because the petition shows that the assessed valuation of the property subject to taxation within the district is $4,691,000.00, and the two per cent. tax limitation imposed therein on taxing districts would be $93,820.00, when the indebtedness here created is only $50,000.00. Neither do we find the act under consideration, or the election held thereunder, affected by the fact that women having the prescribed qualifications participated in the election. They have a right to do so under the provisions of section 4535h of

the Kentucky Statutes, and also under the act of 1916, which we are now considering. The validity of this character of legislation giving the right to female voters in the district to participate in school elections was upheld by this court in the case of Sisk v. Gardiner, 25 Ky. Law Rep. 18. Nor is this election invalid because it was held upon a day other than the regular election day provided by law. Section 155 Constitution of Ky.; Sisk v. Gardiner, *supra;* Crook v. Bartlet, 155 Ky. 305. Nor is the election invalidated because the vote was *viva voce* instead of by ballot. Munfordville Mercantile Co. v. Board of Trustees District No. 39, et al., 155 Ky. 382.

Finding nothing to show that the act under which the election was held is forbidden by any section of the constitution or that the election held thereunder is in anywise invalid, it results that the judgment below is correct, and it is affirmed.