## Shannon v. Wheeler.

(Decided March 26, 1937.)

B. M. VINCENT, Attorney General, and M. B. HOLIFIELD, Assistant Attorney General, for appellant.

DODD & DODD for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is an appeal from a judgment of the Franklin circuit court, granting a writ of mandamus directed to appellant, E. E. Shannon, auditor of public accounts, ordering him to pay to appellee, Charles C. Wheeler, county tax commissioner of Jefferson county, the sum of $5,000 per month as an advancement upon office expenses and salaries of himself and deputies against later due assessment fees, in accordance with the provisions of section 4072, Kentucky Statutes.

The appellee, Charles C. Wheeler, was duly elected assessor of Jefferson county at the November, 1933, election and was inducted into office for a four-year term beginning January, 1934, and is now its duly qualified and acting tax commissioner.

The appellant, E. E. Shannon (defendant below), is the duly elected and qualified auditor of public accounts of and for the state of Kentucky and was duly elected such at the general November, 1935, election and inducted into office for a four-year term beginning January, 1936.

At the time of the tax commissioner's election, under and pursuant to section 4042a-1 and subsequent sections of the Statutes, it was made his duty to make up and return to the proper authorities the assessment books for Jefferson county, and for his duties so performed by him and his deputies he was allowed, as compensation, the statutory commissions therein provided.

The assessment roll in Jefferson county amounted to nearly $600,000,000, $340,846,930 of which constituted assessment values upon real estate, while the remainder of the assessment represented the value of

personalty and the actual expenses allowed to him for making said assessment, pursuant to said Statutes, amounted for the year 1935 to approximately $75,000.

Further, it appears by the record that the assessment roll for taxes for all purposes in Jefferson county will be increased for the year 1936 by the anticipated amount of some $10,000,000, which additional amount the commissioner will also be required to assess for such year, when the expenses properly allowable under the Statutes to the petitioner for making such assessment will again amount to some $75,000.

Further, it appears that upon the appellee Wheeler's induction into office as tax commissioner of Jefferson county in January, 1934, section 4072, Kentucky Statutes, as amended by chapter 134 of the Acts of the 1928 Session of the General Assembly, was and is now in full force and effect, and by which it is provided that:

> "*Advancement to Jefferson county tax commissioner.*—In counties containing cities of the first class, the county tax commissioner shall be entitled to receive an advancement of five thousand dollars ($5,000.00) per month to defray necessary official expenses and partial payment upon the salaries of himself and his deputies and assistants, and the auditor of public accounts shall on the first of each calendar month draw his warrant on the treasurer in favor of such county tax commissioner for such sum. The sum of such advancements shall be deducted from the total amount found to be due such tax commissioner when yearly settlements are made. Should the tax commissioner in such county die, resign or be removed from office, or should the office of county tax commissioner in such county for any cause become vacant, the sums advanced hereunder shall be deducted from the total sum due for making assessment."

Pursuant to the direction of this section of the Statutes, the appellant, E. E. Shannon, as state auditor, advanced (as had also his predecessor since the effective date of this 1928 amendment of the act) to the appellee tax commissioner the monthly sum of $5,000, as therein directed, from the time of his induction into office, beginning January, 1936, and on through the following months up to and including July, 1936, when he

then and has since refused to advance to the appellee such monthly sum upon the expenses of his office and salaries of himself and assistants for the month of August and subsequent months and stated that he would continue his refusal to make such monthly advancements to him, unless ordered by the court to do so, basing his refusal upon the provisions of an act known as chapter 98, Regular Session Acts of the 1936 General Assembly, relating to revenue and taxation, which undertakes to repeal chapter 148, 1934 Acts of the General Assembly (section 4019, Kentucky Statutes [1934 Edition]), by providing that no state tax shall be levied, assessed, or collected on real estate.

Upon the auditor's thus refusing to issue the warrant for such advancement to the appellee tax commissioner for the month of August, 1936, he brought this suit for a writ of mandamus against the auditor, requiring him to issue the warrant for the month of August and like warrants for the subsequent months of his term of office.

Plaintiff in his petition alleged the above facts in substance and upon a demurrer being filed to the petition (but before same was passed on) he filed an amended petition, wherein the multiplicity of duties, conditions, and the daily requirements of his office, making its all-year operation necessary for the proper making up of the voluminous tax assessment rolls, were set out with more particularity, amply tending to show that due to the very complexity and extensive character of the work of the office it was necessary to adopt a different system of official routine for performing the exacting and intricate duties thus peculiarly adhering to the office of tax commissioner of Jefferson county, which was not applicable to nor required generally of the other county tax commissioners' offices.

The amended petition set out the following facts and conditions, which adhere to the Jefferson county tax commissioner's office and do not generally obtain to the office in the counties of the state not having a city of the first class, and which, it alleged, justifies and calls for an advancement to this one class of county tax commissioners and furnishes a natural and distinctive ground for its separate classification, as provided by section 4072, Kentucky Statutes: That the

office of tax commissioner of Jefferson county had to be kept open the year round and that to perform the duties of the office it required the full time of the tax commissioner and the thirty-seven deputies and assistants allowed him; that the work of his office, by reason of its complexity and volume, called for the preparation of some thirty-four ledgers containing some 60,000 pages of written matter, for properly making up the tax rolls of the county; that in order to efficiently make said assessment and prepare said assessment rolls, the Jefferson county office found it expedient and necessary to make up and keep on hand 100,000 cards, known as real estate cards, some 75,000 cards, known as personalty cards, and approximately 20,000 cards, known as intangible personalty cards, which system of operation is necessary in order to properly prepare the data required by law in making up the tax rolls of the county; that in addition to these office requirements, the tax commissioner is further, in counties containing cities of the first class (as does Jefferson county), required to make up and keep some 90,000 automobile cards, in order to have properly valued and placed on the assessment rolls the automobiles owned by the taxpayers of said county; further, that the Jefferson county office is required to have made up before its deputies and filed approximately 65,000 schedules; and that at the time of the auditor's refusing to make the monthly advancement directed by the statute, supra, and his bringing of this suit seeking a mandamus therefor, he and his deputies were making up approximately 1,000 of such schedules per day; that his duties are different from those of the other county tax commissioners, and distinguish the office of county tax commissioner of Jefferson county from the offices of tax commissioners in other counties of the state containing no cities of the first or second class.

The general demurrer of the defendant auditor was then directed to the petition and petition as amended, when, after the hearing of argument and submission of the case, the trial court overruled the demurrer. Thereupon, the defendant declining to plead further, judgment was entered sustaining the prayer of the petition and granting a writ of mandamus, directing the auditor to draw his warrant upon the state treasurer for $5,000, payable to plaintiff, Charles C. Wheeler, for

the month of August, 1936, and for each subsequent month of his term of office, in accordance with the provisions of the statute so directing.

Complaining of this judgment, the appellant auditor seeks its reversal, chiefly upon the one ground that section 4072 of the Statutes, under which the petition and amended petition were drawn, is unconstitutional, in that (he contends) it is in direct contravention of subsections 18 and 29, section 59, of the Constitution. He also insists that section 1, chapter 98, Acts of 1936 (indirectly involved), in providing that no state tax shall be levied, assessed, or collected on real estate, is constitutional and therefore that the security for the advancements is lessened by the amount of the real estate assessment fees formerly owing by the state to the tax commissioner for real estate assessments.

Turning now our attention to the consideration and disposition of the first of these grounds upon which the validity of section 4072, Kentucky Statutes, is assailed, appellant contends that this act concerning the duties and compensation of the county tax assessor (later commissioner) was first enacted as section 32, article 2, chapter 22, 1906 Acts of the General Assembly, wherein no advancement to any one assessor or class of county assessors was provided for; that later, by an act of the Legislature approved March 7, 1910, chapter 6, section 32, article 2, chapter 22, Acts of 1906 (now section 4072, Kentucky Statutes), was amended so as to provide the following:

"In counties containing a city of the first class on the 1st of March, 1910, and the first of each calendar month thereafter, the Auditor of Public Accounts shall draw his warrant upon the Treasurer for fifteen hundred dollars, which shall be paid to the County Assessor, said fifteen hundred dollars being an advancement to the assessor by the Commonwealth of Kentucky to defray necessary office expenses and partial payment upon the salaries of himself and deputies. Said sums shall be deducted from the total paid the assessor by law when the yearly settlements are made."

Appellant contends that the only difference between this amendment of 1910 and the amendment of 1928 thereto, here attacked as unconstitutional, is in

the amount directed to be advanced the tax commissioner, the 1910 act requiring a monthly advancement of only $1,500, while the 1928 amendment requires a monthly advancement of $5,000, and that these two amendments of the 1906 act involve practically the same legal question as to their being based upon a proper classification. It is argued that inasmuch as the first or 1910 amendment was by this court held in the case of James v. Barry, 138 Ky. 656, 128 S. W. 1070, 1072, to be unconstitutional, it must follow that the like 1928 amendment of section 4072, Kentucky Statutes, is also unconstitutional.

A proper determination of the question thus raised by this argument and contention, it would appear, calls for our consideration both of the facts and conditions under which this question was presented in the Barry Case, as well as the rules or legal principles therein announced and applied to them in there reaching the decision that the 1910 amendment was unconstitutional.

As to this, the court thus stated in its opinion the factual situation before it and the question thereby presented:

> "Appellant having refused to issue the warrant for the $1,500 provided for in this act for the month of April, 1910, appellee brought this suit for the issual of the writ of mandamus against the Auditor, requiring him to issue the warrant and like warrants for the subsequent months. The Auditor centends that the act is unconstitutional for various reasons, and particularly because it violates sections 59 and 60 of that instrument inhibiting special or local legislation, as well as sections 161 and 235 forbidding the change of the salaries of public officers after they shall have been elected."

Both points were therein directly presented and decided.

Addressing itself to the first of these two questions, that the act was violative of section 59 of the Constitution, the court said:

> "For certain purposes classification by population and its density are not only natural and logical, but any other basis would be unscientific and unsatisfactory. It has therefore been held

frequently that general laws which are by their terms restricted in their operation to cities of the first class in this state, when it was then a notorious fact that there was but one such city, were not in violation of the provisions against local legislation. * * * On the other hand, instances have occurred where it was attempted to classify subjects by the sizes of cities where the question of the density of population had no appreciable relevancy to the subject. * * * When the subject is one that reasonably depends upon or affects the number and density of population as a correlative fact in the scheme of the particular legislation, then such classification is allowable. There are even perhaps other instances justifying such classification. But where the subject is one of general application throughout the state, and has been so treated in a general scheme of legislation, distinctions favorable or unfavorable to particular localities, and rested alone upon numbers and density of population, are invidious, and therefore offensive to the letter and spirit of the Constitution, the latter reading (section 59, Const.) : 'The Legislature shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely: (18) Fees of Officers.—To create, increase, or decrease fees, percentages or allowances to public officers, or to extend the time for the collection thereof, or to authorize officers to appoint deputies. * * * (29) In all other cases where a general law can be made applicable, no special law shall be enacted.' "

Continuing, further it was said:

"It has been held that it was not repugnant to these sections to enact that in counties containing cities of the first class for example certain officers should make reports not required of officers of the same kind in other counties, or that such first-named officers might have deputies or clerks not provided for all others not in that class. * * * But, as was said in Safety B. & L. Co. v. Ecklar, 106 Ky. 115, 50 S. W. 50, 20 Ky. Law Rep. 1770: 'The true test whether a law is a general one in the constitutional sense is not alone that it applies equally to all in a class, though that is also neces-

sary, but, in addition, there must be distinctive and natural reasons inducing and supporting the classification.' ''

This testing rule or principle has been frequently approved and applied by us as a proper one in the decision of cases presenting the question as to whether or not a legal classification was therein made, as resting upon a distinctive and natural reason rather than an arbitrary one.

Further, in there determining that the 1910 amendment was a violation of section 59 of the Constitution (under the circumstances and facts therein presented), as coming within the inhibited class of special legislation, the court, treating the attempted classification there made as one resting only upon a matter of population, which did not alone constitute a natural reason inducing and supporting the classification, said:

"There is not a reasonable or natural classification based alone upon the matter of population to be served. The subject of the act under investigation is independent of the matter of population, is one, in short, that is equally pertinent to all assessors' compensation.''

In other words, the court found that the attempted classification made of the tax commissioner's office in a county having a city of the first class, or, as one based on population alone, did not so differentiate the duties and character of the assessor's office, as then conditioned and operated in Jefferson county, from those of the tax commissioners of other counties; or, that is, the court found that the difference in the nature and character of their duties was only one of amount or volume (rather than a distinguishing and natural difference in the character or system of work of their offices) and did not support the Legislature's classification of the Jefferson county tax assessor's office nor justify its being made an exception to the general law applicable thereto; that such difference did not call for a special law directing the monthly advancements to the tax commissioner of Jefferson county, where his duties, except for the difference found as to the volume or amount of the property assessments, were the same as those of other county assessors, where and to which a general law was provided and applicable.

It does not appear that in the Barry Case there were shown, as here, any special facts or circumstances distinguishing both the scope and character of the duties of the tax commissioner of Jefferson county from that of the county tax commissioners generally in the state, but that the entire basis of the attempted classification there assailed was the difference in population in the counties served.

In other words, the facts, circumstances, and conditions under which the office of the tax commissioner of Jefferson county is now operated and maintained, as set out and alleged in appellee's petition and amended petition, as above summarized, and which must be taken as true upon the demurrer thereto (which were not presented in the Barry Case), clearly served to distinguish the present case in its facts from the Barry Case.

In view of such distinguishing facts, which we must assume were fully known and recognized by the 1928 General Assembly as having taken place and developed, with respect to the present condition and duties of the Jefferson county tax commissioner's office and as being different from those presented to the court in the Barry Case nearly twenty years prior thereto, it is to be presumed that the General Assembly considered that such changed conditions furnished a distinctive and natural reason for reclassifying the office of the county tax commissioner of Jefferson county and that an amendment to the act, providing for monthly advancements to be made the office (which were required for its proper and efficient maintenance and operation), was needful.

The Legislature may have considered that the magnitude of the operating expense of the office was such as to practically preclude all but the wealthy from seeking it and, as a matter of salutary public policy, provided for these monthly advancements so as to bring it within reach of all worthy aspirants. However, what may have been the legislative motivating policy for such enactment is not for us to determine, nor is it within our province to approve or disapprove of it. It is only within our province to determine whether the facts presented in the pleadings furnished such distinctive and natural reasons as supported the classi-

fica'tion made and justified these special advancements to appellee's office.

To such effect, in Shaw v. Fox, 246 Ky. 342, 55 S. W. (2d) 11, 15, it was said:

"The court is not at liberty to declare a legislative classification unconstitutional on the ground it violates public policy, as it is for the Legislature to determine the public policy so far as the state laws are concerned, and its determination thereof is only limited by the Constitution of the state and of the United States."

And again, in Commonwealth v. Kentucky Jockey Club, 238 Ky. 739, 38 S. W. (2d) 987, 997, it was said to the same effect:

"The courts are not authorized to usurp the powers conferred upon another branch of the government, and, when the Legislature finds that the facts warrant a classification, and it has relation to the purpose of the law, is supported by a reasonable distinction, and operates uniformly upon all within the class, the legislation is valid."

And, further, as to this was it said in the Shaw Case, supra, that where the Legislature has found the facts in the particular case to warrant a classification and that it has relation to the purposes of the law, supported by a reasonable distinction therefor, all doubts as to the constitutionality of the statute should then be resolved in its favor. Also to this effect see Jefferson County v. Cole et al., 204 Ky. 27, 263 S. W. 1114.

Upon the showing made by the petition and amended petition herein, we are led to conclude that the Legislature, in enacting the 1928 amendment of section 4072, Kentucky Statutes (here attacked), was authorized, upon its finding the present nature, scope, and character of the tax commissioner's duties and the complexities of his office to be such as differentiated it from the offices of other tax commissioners, to make the attacked special classification of the Jefferson county tax commissioner's office and provide for an advancement upon its operating expenses. Board of Education of City of Louisville v. Sea, 167 Ky. 772, 181 S. W. 670, 677; Smith v. Board of Trustees of Shelby Graded School District, 171 Ky. 39, 186 S. W. 927; Board of Drainage Commissioners of Fulton County v. Board

of Levee Commissioners of Fulton County, 191 Ky. 470, 230 S. W. 959; Nuetzel, County Clerk, v. Members of the State Tax Commission et al., 205 Ky. 124, 265 S. W. 606; Commonwealth v. Lipginski, 212 Ky. 366, 279 S. W. 339; Klein v. Louisville, 224 Ky. 624, 6 S. W. (2d) 1104.

A distinction in the volume, scope, and character of official duties, based on population, was held to properly support the classification made in the Shaw Case, supra, changing the compensation of justices of the peace only serving in counties containing a population in excess of 250,000 from a fee to a salary basis, as providing a more efficient and economical administration of such office. The court there said, with respect to the classification therein made by the Legislature in chapter 147, Acts of 1932 Session:

"It should be presumed that the Legislature at the time of its enactment of the act herein considered had knowledge of these stupendous facts [set out in the petition], as well as some knowledge of the character and number of actions instituted in the justices' courts, during these years, in the other counties of the commonwealth, with a population of less than 250,000. * * * The population and the facts and conditions presented undoubtedly authorized and justified the Legislature to make the classification and adopt the act to avoid or prevent, in the future, the evils thereof."

And again, in the very recent case of Middendorf v. Jameson, 265 Ky. 111, 95 S. W. (2d) 1057, 1058, was this question of classification before us, where the following statement of the rule in Shaw v. Fox, supra, was approved:

"The power of classification for legislative purposes rests with the Legislature, subject to the constitutional limitation or restriction that it must rest on some natural and reasonable difference which appears reasonable and just in relation to the act in respect to which the classification is proposed. The Constitution permits the Legislature to indulge in making classifications of subjects of legislation for the purpose of making different classes, for the meeting of different contingencies, naturally requiring different legislation in order

that the Legislature may adopt general legislation to meet the needs of the people, to promote some public object, or the welfare or interest of the general public. Smith et al. v. Board of Trustees, 171 Ky. 39, 186 S. W. 927; Jones v. Russell, 224 Ky. 390, 6 S. W. (2d) 460. Such classification will not be disturbed by the court unless so manifestly unfounded, arbitrary, or unjust as to impose a burden upon, or exclude, one or more of a class, without reasonable basis in fact. City of Louisville v. Coulter, 177 Ky. 242, 197 S. W. 819, L. R. A. 1918A, 811; Mansbach Scrap Iron Co. v. City of Ashland, 235 Ky. 265, 30 S. W. (2d) 968; Jones v. Russell, supra.''

See, also, Bromley v. McCaughn, 280 U. S. 124, 50 S. Ct. 46, 48, 74 L. Ed. 226, where it is held that ''differences in degree may be carried to a point where they produce distinctions in kind,'' recognized generally as a proper basis for classification.

While approving the legal principle or rule stated in the Barry Case, supra, for testing the validity of a legislative classification, relied on by appellant as here controlling, we are of the opinion that the Barry Case is to be distinguished in its facts, to which the rule was there applied, from those found in the instant case, showing a different situation now obtaining in the tax commissioner's office of Jefferson county than found to exist in 1910, when the Barry Case was decided. These facts serve to distinguish the duties and the system required for the proper maintenance and efficient operation of the office from those required with respect to other county tax commissioners' offices in the state, which was not found to be the case in the facts presented in the Barry Case. It is our conclusion that the facts constituting these distinguishing differences between the Jefferson county tax commissioner's office, and the other county tax commissioners' offices generally throughout the state were well within the legal principles and rules hereinabove announced for testing the validity of legislative classification, and, when tested thereby, we conclude are sufficient to support the classification made of the Jefferson county tax commissioner's office in section 4072 and its direction that for the proper and efficient maintenance and operation of a tax commissioner's office of such class the monthly

sum of $5,000 shall be advanced by the state auditor to its tax commissioner upon the all year operating expenses of that office and the salaries of the commissioner and his deputies. The second ground upon which the validity of section 4072 is challenged is that since its passage chapter 98 of the Acts of 1936 has been enacted, exempting from assessment and taxation real estate for state purposes and removing the auditor's liability therefor, which in a large measure endangers the state's security for its directed monthly advancements to the appellee tax commissioner. It is sufficient answer to this argument that the prior status of security for such advancements made has now been restored, in that chapter 98 of the Acts of 1936 has this day been held by us to be unconstitutional in the case of James W. Martin, Commissioner, v. High Splint Coal Co., 268 Ky. 11, — S. W. (2d) —.

The opinion of the learned trial court being in harmony with our views, its judgment, ordering the auditor to draw his warrant in favor of the Jefferson county tax commissioner for these monthly sums, as directed by the involved section 4072 of the statutes, is approved and its judgment is affirmed.