# Beauchamp, County Judge, et al. v. Silk

(Decided Oct. 21, 1938.)

ROBERT C. LOGAN, GROVER C. SALES and ANNA H. SET-TLE for appellants.

MILLIKEN & HANDMAKER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At the first extraordinary session of the 1938 Gen-

eral Assembly of this commonwealth, which convened March 2nd of that year, there was enacted chapter 37, which is found on page 1118 of the volume containing all the acts of that year at its regular and its two extraordinary sessions held therein. That chapter (37) will hereinafter be referred to as the "amendatory act." It amended and reenacted section 331e-3 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, it being a part of chapter 18 in the latter volume, relating to children; and dealing only with the appointment by various county courts of the commonwealth of county probation officers as a part of the machinery for the enforcement of the juvenile provisions of that chapter. The section before being so amended will hereafter be referred to as the "old act." The amendatory act preserved, in principle, all of the requirements and provisions of the old act with these two exceptions, (1) it increased the compensation of such juvenile officers and appointees for the administration of the act in counties containing cities of the first and second classes, and (2) it provided for what is referred to as the "Merit System" in counties containing cities of the first class. Exception (2) created a Merit Board to be composed of four members with prescribed qualifications, and the county judge, by virtue of his office was made its fifth member.

We are not concerned in the solution of the questions presented by this record with the way and manner of bringing the "Merit Board" into existence, since that feature of the amendatory act is not embraced by the meritorious constitutional objection herein urged against the validity of the amendatory act. Another objection is the one urging forbidden classification and by reason thereof the contention is made that the amendatory act was and is special legislation in still other respects, and which objection will be hereinafter disposed of. The chief attack upon the amendatory act made by appellee and plaintiff below, William Silk, in this action, is that it requires the county judge or county court, in counties containing a city of the first class to select such probation officers and other appointees from the list of eligibles whom the Merit Board has found to be qualified through examinations that it is required to conduct, thereby withholding from the county judge or the county court the right in the exercise of his

jurisdiction to select such probation officers and other appointees from the county at large—the same as is given to all other county judges and county courts in the remaining 119 counties of the commonwealth. It is, therefore, insisted that such restriction invades and is contrary to the express provisions of section 141 of our Constitution, saying: ''The jurisdiction of the county court shall be uniform throughout the state, and shall be regulated by general law, and, until changed, shall be the same as now vested in the county courts of this state by law.''

This action was filed in the Jefferson circuit court against all of the public functionaries created by the old and the amendatory acts, in which plaintiff, as a citizen and tax payer of Jefferson county, for himself and for the benefit of all other similar taxpayers therein, sought a declaration of rights under our Declaratory Judgment Statute, Civil Code of Practice, section 639a-1 et seq., and to enjoin defendants from carrying into effect the Merit System therein provided for, upon the two grounds that (a) the statute was special legislation and contrary to all sections of our Constitution inhibiting that class of legislation where a general statute could be made applicable, and (b) that the provisions of the statute whereby the county judge or county court is restricted in the selection of probation officers and employees to the list furnished him by the Merit Board and thereby deprived of making such selection from the entire citizenry of the county, which it is insisted is in direct violation of section 141, supra, of the Constitution.

The first defensive move made by defendants was an objection to the right of plaintiff to maintain the action. It was overruled by the learned trial judge, followed by an answer denying the grounds relied on by plaintiff in his petition. The cause was in due time submitted to the court for final determination and it adjudged that the attacked portion of the statute was—for the reasons stated, supra—in direct violation of section 141 of our Constitution, because it, as enacted, destroyed the uniformity of jurisdiction of the county courts ''throughout the state'' and which that section expressly inhibited. Questioning the propriety of that judgment defendants prosecute this appeal.

In support of the objection to plaintiff's right to

maintain the action defendants' counsel cite and rely on a number of cases wherein the particular plaintiff therein possessed no legal right to maintain the action and he was adjudged to be disqualified to make the contentions and to obtain the relief sought in and by his petition. But in each and every one of them the plaintiff exhibited no pecuniary or other interest in the subject matter of the litigation, and it was consequently held by this court that he had no standing in court as a contender for the relief he sought. However, we have uniformly held that in cases of this kind involving an attack upon a public expending measure—or contemplated act by some official and to carry out which involved the expenditure of public funds raised by taxation—a single tax payer within the affected territory might maintain an action questioning the validity of what the statute required, or what the official was threatening to do, upon the ground that the statute so attacked, or the step proposed to be taken by the officer was unauthorized and would involve the illegal and wrongful expenditure of public funds. See Stiglitz, County Clerk, v. Schardien, 239 Ky. 799, 40 S. W. (2d) 315, and cases therein cited. That (Stiglitz) case, perhaps involved more of a political than a pecuniary right of the plaintiff therein, but in upholding his right to maintain the action we said [page 317]: "If an act of the Legislature infringes the constitutional rights of a citizen, *taxpayer*, and voter, he may invoke the processes of the courts to prevent the performance of a duty attempted to be imposed by such void act. Hager v. Robinson, 154 Ky. 489, 157 S. W. 1138; Schardein v. Harrison, 230 Ky. 1, 18 S. W. (2d) 316; Ragland v. Anderson, 125 Ky. 141, 100 S. W. 865, 30 Ky. Law Rep., 1199, 128 Am. St. Rep. 242; Yates, Clerk, v. Collins, 118 Ky. 682, 82 S. W. 282, 973, 26 Ky. Law Rep. 558, 930." (Our emphasis.)

It therefore will be seen that the infringement of a pecuniary right is as effectual for the maintenance of an action by a tax payer as is the protection of a political right (which latter appears to have been the only one involved in the Stiglitz Case) and which is so declared in the list of cases embodied in the excerpt from that opinion. This objection, therefore, questioning the right of plaintiff to maintain the action, was properly overruled, since the expenses of the Merit Board created by the amendatory act are required to be paid out

of the general public funds of the county raised by taxation. We, therefore, turn to a consideration of the meritorious grounds relied on in the petition in support of the relief sought by plaintiff in it.

Ground (a) is virtually abandoned by plaintiff in brief of his counsel filed in this court, since it makes no reference thereto—the only argument therein made being confined to the attack embodied in ground (b) supra. We could, therefore, pass it without further reference to it, or taking notice of it. But inasmuch as we are convinced that it is without merit we append these cases which demonstrate that conclusion: Shannon v. Wheeler, 268 Ky. 25, 103 S. W. (2d) 718; Herold v. Talbott, 261 Ky. 634, 88 S. W. (2d) 303; Shaw v. Fox, 246 Ky. 342, 55 S. W. (2d) 11; Jones v. Russell, 224 Ky. 390, 6 S. W. (2d) 460; Jefferson County v. Cole, 204 Ky. 27, 263 S. W. 1114, and Commonwealth v. Ward, 136 Ky. 146, 123 S. W. 673. Under the doctrine of those opinions—as well as others that could be cited, both foreign and domestic—there can be no question but that the general purpose attempted to be accomplished by the juvenile statute would authorize a classification as between metropolitan and urban areas; but when jurisdiction of county courts is involved, then the provisions of section 141, supra, of our Constitution specifically requires uniformity, thereof, "throughout the state," and which we interpret as forbidding classification either withdrawing or curtailing that jurisdiction, although the classfication might be supported—under declared principles governing such right—if not so constitutionally inhibited.

But ground (b) is not so destitute of merit. In the case of Fox v. Petty, 244 Ky. 385, 51 S. W. (2d) 260, there was presented for this court's determination the question of the validity of a statute providing for a Civil Service Board to make examinations and to appoint county patrolmen in counties containing a city of the first class within this commonwealth. We held the act to be an invasion of the inhibition contained in section 141 of our Constitution, since such county patrolmen were appointed by the county judge sitting as a county court in all of the other 119 counties of the Commonwealth, and that any curtailment of that right of appointment was an infringement upon the "jurisdiction" of the county court within the counties or

county to which the statute was made applicable. It was held in that opinion that the word "jurisdiction" as employed in the constitutional section, embraced quasi legislative and all ministerial acts of county courts the same as those strictly judicial. In other words, that "jurisdiction" as applied to such courts (and as employed in the Constitution's section) embraced all duties conferred upon them, and that any statute attempting to abridge such jurisdiction in any county—or a less number of counties than the whole number within the commonwealth—would be in violation of that section. It is true that in the Fox Case the appointment of county patrolmen was attempted to be taken away from the county court of Jefferson County entirely and conferred upon the County Civil Service Board which the act created. But we can draw no logical distinction between a complete deprivation of jurisdiction of the county court, and a pro tanto deprivation or curtailment of it, since in either event the uniformity of "jurisdiction" as required by that section is invaded.

In the instant case the county court of Jefferson county (but by inference only, and which inferred requirement constitutes the vice aimed at by plaintiff's petition) is deprived of the jurisdictional right to select the involved probation officers created by the juvenile statute from the citizens at large within his county, and is confined to the list of persons, whether small or large, that the Merit Board provided for in the amendatory act sees proper to certify as eligible for appointment, and which we unhesitatingly conclude withholds from such county courts the full and complete jurisdiction necessary and requisite to make it uniform with like jurisdiction of appointment possessed by all of the other 119 county courts of the commonwealth.

The act is very crudely drawn. In its section 3 there appears this language: "The Board shall fix standards and qualifications for eligibility of candidates for said competitive examinations and shall choose for the respective positions the candidates receiving the highest grades in the examinations." That language leaves it entirely to the Merit Board to fix eligible qualification and standards of efficiency in order to entitle the applicant to appointment. It would also *seem* to indicate that the board itself might "choose" from the list of eligible applicants the persons to fill the re-

spective positions. However, we are inclined to the conclusion that it was the intention and purpose, by the use of that language, to confer the power upon the board to "choose" candidates whom competitive examinations disclosed were the best qualified to fill the places, and that the actual appointments should be made by the county court. Moreover, the statute as framed—even if it did not contain the objection referred to and was made uniformly applicable throughout the state—is yet vague; a pronounced instance of which is that it nowhere fixes any standard of qualification for passing the examinations held by the Board; nor does it require any limitation upon the number of successful applicants for examination whose names should appear in the list to be furnished to the county court or county judge from which that functionary might make the appointments. We point out such criticisms in order that a future legislature, if it sees proper to make such provisions applicable uniformly through the state, may correct them.

Before closing we would state that our conclusion herein reached is by no means the one that we would have preferred, since we are convinced that the purpose attempted to be accomplished by the amendatory act is a most commendable and worthy one. It could be made applicable alike to every county in the commonwealth, and at but trifling expense, if such a universally enacted statute made the same provisions with reference to no compensation, but for expenses only, as does the amendatory act, involved in this case. The constitutional objections urged herein would not interfere with any differently provided way, manner or method of selecting the examining board, since those duties do not appertain to the jurisdiction of *county courts*. Therefore, if such boards were provided for in all of the counties of the commonwealth, the fact that they might be differently selected in properly classified counties would not invade the requirements of section 141 of our Constitution. Our duty as we have attempted to perform it herein is mandatorily required of us, and from which there is no escape.

Wherefore, for the reasons stated, the judgment is affirmed.